WILLIAM ZUCCOLO, Plaintiff-Appellant, v. HANNAH MARINE CORPORATION, Defendant-Appellee.

First District (2nd Division) No. 1—08—0270

Opinion filed December 16, 2008.

Sneckenberg, Thompson & Brody, of Chicago (William J. Sneckenberg, Steven M. Thompson, and Matthew L. McBride, of counsel), for appellant.

Seyfarth Shaw LLP, of Chicago (Yvette A. Heintzelman and Tracy M. Billows, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, William Zuccolo, appeals from an order of the circuit court entering summary judgment in favor of the defendant, Hannah Marine Corporation (Hannah Marine), finding that his claims brought under the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2004)) and the Illinois common-law tort of retaliatory discharge were preempted by federal maritime law. For the reasons that follow, we reverse and remand the matter to the circuit court for further proceedings.

The plaintiff filed a two-count complaint against Hannah Marine, alleging that he was discharged from his position as captain of a vessel known as the "William L. Warner" (the Warner) for threatening to report, actually reporting, and refusing to participate in activities that he reasonably believed were in violation of federal maritime law. Count I sought relief under the Whistleblower Act. Count II sought relief pursuant to the Illinois common-law tort of retaliatory discharge.

Thereafter, Hannah Marine filed a motion for summary judgment. Attached to the motion were the depositions of the plaintiff and three additional employees of Hannah Marine, Edward Hogan, Jeffery Covinsky, and Aaron Bensinger. Also attached was the deposition of Lieutenant Commander Dean Firing, an inspector at the United States Coast Guard (Coast Guard).

In his deposition, the plaintiff testified that Hannah Marine took over management of the Warner in 2003 and retained him as captain of the vessel. He described the Warner as a "fueling oil tanker," which would provide fuel to other vessels in ports throughout the Chicagoland area.

According to the plaintiff, the Warner was not in compliance with various maritime regulations during the 2003 sailing season. The plaintiff testified that not all of the legally required documents were on board the Warner; namely, the vessel's transfer procedure and pollution response plan as well as copies of the Notice to Mariners, a weekly safety publication from the Coast Guard. The plaintiff further testified that the Warner's crew did not contain the required number of licensed, able-bodied seamen and that, because of problems with the Warner's sanitation system, human waste was illegally dumped overboard.

The plaintiff stated that, beginning in June of 2003, he repeatedly reported these problems to Edward Hogan, his immediate supervisor, and Aaron Bensinger, the individual who handled the day-to-day operations. He also discussed the Warner's problems with Jeffery Covinsky, the president of Hannah Marine. The plaintiff further testified that he informed Hannah Marine that he would not pilot the Warner in the 2004 sailing season, but admitted that he never actually refused to operate the vessel, as he was only employed by Hannah Marine for one week of the 2004 season.

The plaintiff testified that, when the Coast Guard conducted its annual inspection of the Warner on March 12, 2004, he told the Coast Guard representative to examine the vessel's pollution plan and transfer procedures, as he believed that these documents were not in compliance with federal regulations. The plaintiff also testified that Bensinger was present for the inspection and was close enough to overhear this conversation.

According to the plaintiff, that same month, he also went to the Coast Guard to discuss the violations onboard the Warner. The plaintiff, however, admitted that he never informed Hogan, Bensinger, or Covinsky that he had gone to the Coast Guard.

The plaintiff testified that, on April 8, 2004, he attended a meeting with Hogan, Bensinger, and Covinsky. At this meeting, he told Covinsky that he had given Bensinger a letter discussing the problems with the Warner and asked Covinsky if he had seen it. The plaintiff stated that, when Covinsky denied ever seeing the letter, he told Covinsky, "[y]ou must be embarrassed over this. Who the hell is running this company?" Covinsky then told him that he was fired, citing "insubordination" as the basis for the termination.

In their depositions, Hogan, Bensinger, and Covinsky each testified that the plaintiff was fired for insubordination. Each of them also testified that they were unaware that the plaintiff had reported any violations to the Coast Guard prior to his termination on April 8, 2004.

When deposed, Lieutenant Commander Firing testified that the plaintiff, while still employed at Hannah Marine, spoke to him about possible violations in relation to the Warner. However, Lieutenant Commander Firing stated that he did not inform anyone at Hannah Marine that the plaintiff had made a report to the Coast Guard.

On January 11, 2008, the circuit court granted Hannah Marine's motion for summary judgment, finding that both of the plaintiff's claims were preempted by federal maritime law. This appeal followed.

Because this appeal is taken from an order of the circuit court granting a motion for summary judgment, our review is de novo. Harrison v. Hardin County Community Unit School District No. 1, 197 Ill. 2d 466, 470-71, 758 N.E.2d 848 (2001). Under this standard of review, we may affirm the circuit court's ruling on any basis that is supported by the record. Kostal v. Pinkus Dermatopathology Laboratory, 357 Ill. App. 3d 381, 384, 827 N.E.2d 1031 (2005).

Summary judgment is a drastic means of disposing of litigation and should only be employed where the pleadings and evidentiary material in the record, when viewed in a light most favorable the nonmovant, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2004); Happel v. Wal-Mart Stores, Inc., 199 Ill. 2d 179, 186, 766 N.E.2d 1118 (2002). A triable issue of fact exists where there is a dispute as to the material facts or where the material facts are undisputed, but different inferences may be reasonably drawn from those facts. In re Estate of Hoover, 155 Ill. 2d 402, 411, 615 N.E.2d 736 (1993).

In urging the reversal of the summary judgment entered in favor of Hannah Marine, the plaintiff argues that the circuit court erred in finding that federal law preempted his claims brought under the Whistleblower Act and the Illinois common-law tort of retaliatory discharge. He contends that no clear conflict exists between federal maritime law and either the Whistleblower Act or the common-law tort of retaliatory discharge, and, consequently, there is no preemption.

Hannah Marine disagrees, maintaining that the plaintiff's claim brought pursuant to the Whistleblower Act is preempted by the Seaman's Protection Act (46 U.S.C.A. §2114 (West Supp. 2004)). Additionally, Hannah Marine asserts that the plaintiff's Illinois common-law retaliatory discharge claim is preempted by federal maritime common law.

■ The United States Constitution provides that federal judicial power extends "to all Cases of admiralty and maritime Jurisdiction." U.S. Const., art. III, §2, cl. 1. Section 1333(1) of the Judiciary and Judicial Procedure Act, however, "sav[es] to suitors in all [admiralty or maritime] cases all other remedies to which they are otherwise entitled." 28 U.S.C.A. §1333(1) (West Supp. 2004). As a consequence, federal jurisdiction over maritime cases has never been exclusive. *American Dredging Co. v. Miller*, 510 U.S. 443, 446, 127 L. Ed. 2d 285, 292, 114 S. Ct. 981, 984 (1994). Rather, a "State may modify or supplement the maritime law by creating liability *** when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation." *Just v. Chambers*, 312 U.S. 383, 388, 85 L. Ed. 903, 907, 61 S. Ct. 687, 691 (1941). In other words, state law is preempted where it " 'interferes with the proper harmony and uniformity' " of federal maritime law. *American Dredging Co.*, 510 U.S. at 447, 127 L. Ed. 2d at 293, 114 S. Ct. at 985, quoting *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 216, 61 L. Ed. 1086, 1098, 37 S. Ct. 524, 529 (1917).

■ In response to a decision by the United States Court of Appeals for the Fifth Circuit, finding no cause of action for a seaman who had been discharged for reporting safety violations to the Coast Guard (*Donovan v. Texaco Inc.*, 720 F.2d 825 (5th Cir. 1983)), the United States Congress passed the Seaman's Protection Act. Pursuant to this statute, a civil action may be brought by a seaman who has been discharged or otherwise discriminated against because "the seaman in good faith has reported or is about to report to the Coast Guard or other appropriate Federal agency or department that the seaman believes that a violation of a maritime safety law or regulation prescribed under that law or regulation has occurred." 46 U.S.C.A.

§2114(a)(1)(A) (West Supp. 2004). The Seaman's Protection Act also allows an action to be brought where a seaman has been discharged or otherwise discriminated against because "the seaman has refused to perform duties ordered by the seaman's employer because the seaman has a reasonable apprehension or expectation that performing such duties would result in serious injury to the seaman, other seamen, or the public." 46 U.S.C.A. §2114(a)(1)(B) (West Supp. 2004). However, where a seaman alleges he was retaliated against because he refused to perform an assignment that he reasonably believed would have resulted in serious injury, the seaman must have first "sought from the employer, and been unable to obtain, correction of the unsafe condition." 46 U.S.C.A. §2114(a)(3) (West Supp. 2004).

■ In Illinois, the Whistleblower Act prohibits an employer from retaliating against an employee "for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation" (740 ILCS 174/15 (West 2004)) or "for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation" (740 ILCS 174/20 (West 2004)). If an employee has been retaliated against in violation of the Whistleblower Act, he may bring a civil action against his employer. 740 ILCS 174/30 (West 2004).

Relying primarily on the differences in the reporting requirements of the Whistleblower Act and the Seaman's Protection Act, Hannah Marine asserts that the two statutes are in conflict. Specifically, Hannah Marine notes that the Seaman's Protection Act requires that an employee report the alleged violations of maritime law to either the Coast Guard or another federal agency (46 U.S.C.A. §2114(a)(1)(A) (West Supp. 2004)); whereas, the Whistleblower Act does not expressly limit the type of government agency to which the employee may report a violation (740 ILCS 174/15 (West 2004)). Hannah Marine also notes that, while both the Seaman's Protection Act and the Whistleblower Act provide for a cause of action where an employee has been retaliated against for refusing to perform certain duties (46 U.S.C.A. §2114(a)(1)(B) (West Supp. 2004); 740 ILCS 174/20 (West 2004)); only the Seaman's Protection Act requires that the employee first attempt to work with the employer to remedy the situation before refusing to perform the assignment (46 U.S.C.A. §2114(a)(3) (West Supp. 2004)).

■ The legislative history of the Seaman's Protection Act indicates that the statute's primary purpose was to abrogate the rule adopted by the Fifth Circuit in *Donovan*. See S. Rep. No. 454, at 12 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 4831, 4842. Nothing in the legislative history, however, suggests that, in enacting the Seaman's Protection

Act, Congress sought to provide the exclusive remedy for retaliatory discharge claims brought by seamen. See *Robinson v. Alter Barge Line, Inc.*, 513 F.3d 668, 671 (7th Cir. 2008). Consequently, providing a concurrent state remedy under the Whistleblower Act is neither inconsistent with federal legislation nor hostile to the uniformity of federal maritime law. For this reason, we conclude that the plaintiff's claim brought pursuant to the Whistleblower Act is not preempted by the Seaman's Protection Act.[1]

■ Turning to the plaintiff's common-law retaliatory discharge claim, Hannah Marine argues that the Illinois common-law tort of retaliatory discharge provides broader protection than that afforded by the federal maritime common law and, thus, presents a conflict. Again, we disagree.

In seeking relief pursuant to the Illinois common-law tort of retaliatory discharge, the plaintiff alleged that his employment with Hannah Marine was terminated because he threatened to report, or actually reported, various violations of maritime regulations. If the federal maritime common law provides for a retaliatory discharge action under similar circumstances, state and federal law would not be in conflict. If, however, it is clear that the federal courts would not recognize such a tort, a conflict would exist.

Our review of the relevant case law reveals that the federal courts that have ruled on this matter are not unanimous. Some federal courts have limited the common-law tort of retaliatory discharge to seamen who have been discharged for filing a personal injury action against their employers. See *Meaige v. Hartley Marine Corp.*, 925 F.2d 700, 702 (4th Cir. 1991); *Feemster v. BJ-Titan Services Co.*, 873 F.2d 91, 93-94 (5th Cir. 1989). Others have applied the tort more broadly. See *Borden v. Amoco Coastwise Trading Co.*, 985 F. Supp. 692, 698-99 (S.D. Tex. 1997) (recognizing a common-law tort of retaliatory discharge where a seaman was terminated for refusing to carry out an

---

[1]We note that the remedies available under the state and federal statutes differ. For example, the Whistleblower Act allows interest to be recovered on an award of back pay (740 ILCS 174/30(2) (West 2004)), but the Seaman's Protection Act does not (46 U.S.C.A. §2114(b)(2) (West Supp. 2004)). Additionally, although both statutes provide for an award of costs and reasonable attorney fees, the Seaman's Protection Act limits such an award to $1,000. Compare 740 ILCS 174/30(3) (West 2004) with 46 U.S.C.A. §2114(b)(3) (West Supp. 2004). At this stage of the proceedings, however, we are unable to determine the specific remedies the plaintiff seeks or to which he would be entitled. As a consequence, it would be premature for us to consider whether any of the remedies provided for in the Whistleblower Act are preempted by federal law.

assignment that would have endangered lives); *Seymore v. Lake Tahoe Cruises, Inc.*, 888 F. Supp. 1029, 1035 (E.D. Cal. 1995) (same). In the absence of a well-established body of precedent, we are unable to say that the plaintiff's claim brought under the Illinois common-law tort of retaliatory discharge would conflict, or otherwise unduly interfere, with the uniformity of federal maritime law. We, therefore, conclude that the plaintiff's Illinois common-law retaliatory discharge claim is not preempted by the federal maritime common law.

Hannah Marine also argues that the plaintiff's common-law claim fails because federal maritime law provides an alternative remedy. Although Illinois courts have considered whether other alternative remedies are available when deciding whether to expand the common-law tort of retaliatory discharge (see, *e.g., Jacobson v. Knepper & Moga*, 185 Ill. 2d 372, 378, 706 N.E.2d 491 (1998); *Leweling v. Schnadig Corp.*, 276 Ill. App. 3d 890, 898, 657 N.E.2d 1107 (1995)), the mere existence of a federal remedy does not preclude a state common-law action for retaliatory discharge (see *Fragassi v. Neiburger*, 269 Ill. App. 3d 633, 637, 646 N.E.2d 315 (1995)). Furthermore, Illinois courts have consistently recognized a common-law tort of retaliatory discharge where, as in this case, an employee has been fired for reporting dangerous or illegal activities in the workplace. See *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 132, 421 N.E.2d 876 (1981); *Carty v. Suter Co.*, 371 Ill. App. 3d 784, 789, 863 N.E.2d 771 (2007); *Gomez v. The Finishing Co.*, 369 Ill. App. 3d 711, 719, 861 N.E.2d 189 (2006). Accordingly, we reject Hannah Marine's argument that the plaintiff cannot bring a claim under the Illinois common-law tort of retaliatory discharge because an alternative, federal remedy exists.

■ Finally, Hannah Marine argues that summary judgment should be entered in its favor as there are no genuine issues of material fact regarding the element of causation. Specifically, Hannah Marine contends that the plaintiff cannot establish a causal connection between his discharge and his internal complaints to management, his refusal to operate the vessel, or his complaints to the Coast Guard. Hannah Marine further asserts that the record clearly demonstrates that it had a valid reason for terminating the plaintiff's employment, his insubordinate conduct at the April 8, 2004, meeting.

In considering the element of causation, the ultimate issue to be decided is the employer's motive in discharging the employee. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 163, 601 N.E.2d 720 (1992). The issue of an employer's true motive in terminating an employee is a question of fact, not normally subject to summary judgment. *Miller v. J.M. Jones Co.*, 225 Ill. App. 3d 799, 804, 587 N.E.2d 654 (1992).

In his deposition, the plaintiff testified that from June of 2003

through his discharge on April 8, 2004, he repeatedly complained to Bensinger, Hogan, and Covinsky that the Warner was in violation of federal maritime law. The plaintiff further testified that, although he never actually refused to operate the Warner, he did inform Hannah Marine that he would not pilot the vessel in the 2004 sailing season, but was only employed by Hannah Marine for one week during that season. Additionally, while the plaintiff admitted that, prior to his termination, he did not inform anyone at Hannah Marine about his meetings with the Coast Guard, the plaintiff also testified that, during the annual inspection of the Warner, he told the Coast Guard representative to investigate the vessel's pollution control response plan and transfer procedures, as he believed that these documents were not in compliance with federal regulations. According to the plaintiff, Bensinger was present for this inspection and was close enough to hear what was said. Based on this evidence, a rational trier of fact could conclude that, before the plaintiff was discharged on April 8, 2004, management at Hannah Marine was aware that he had reported violations of federal regulations to the Coast Guard during the annual inspection held on March 14, 2004.

In a retaliatory discharge case, causation may be established by circumstantial evidence. *Hugo v. Tomaszewski*, 155 Ill. App. 3d 906, 910, 508 N.E.2d 1139 (1987). Given the relatively short span of time between the plaintiff's termination on April 8, 2004, and his internal complaints to the management at Hannah Marine, his refusal to pilot the Warner, and his complaints to the Coast Guard, a rational trier of fact could find that Hannah Marine had a retaliatory motive in discharging the plaintiff. See *Hugo*, 155 Ill. App. 3d at 910. Consequently, we believe that a disputed question of fact as to Hannah Marine's motivation in terminating the plaintiff still remains, thereby precluding summary judgment.

Based on the foregoing analysis, we conclude that the circuit court erred in granting Hannah Marine's motion for summary judgment. We, therefore, reverse the order of the circuit court entering summary judgment in favor of Hannah Marine and remand the cause to the circuit court for further proceedings.

Reversed and remanded.

KARNEZIS, P.J., and SOUTH, J., concur.