SECOND DIVISION

No. 1-09-2930

| | | |
|---|---|---|
| DARREN SARDIGA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 05 L 8856 |
| | ) | |
| THE NORTHERN TRUST COMPANY, | ) | Honorable |
| | ) | Allen S. Goldberg, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Karnezis and Connors concurred in the judgment.

OPINION

After less than a year on the job, Darrren Sardiga, the plaintiff-appellant, was fired from his position as vice-president of defendant Northern Trust's Financial Consulting group. He filed a two-count complaint alleging retaliatory discharge and a violation of the Illinois Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2004)). He claims that he was fired as a result of his repeated complaints and questions to supervisors which expressed his belief that Northern Trust was engaged in deceptive illegal practices. Sardiga appeals from the trial court's summary judgment to Northern Trust on the Illinois Whistleblower Act count. The court held that the Act requires a "refusal to participate" and Sardiga failed to plead facts showing his refusal to participate in an alleged illegal activity. Further, the court found that no material issue of fact existed demonstrating Sardiga's refusal to participate. We are now called upon to resolve a matter of

No. 1-09-2930

statutory interpretation and determine whether Sardiga's repeated complaints and questions to his supervisors about what he believed to be illegal practices are sufficient to meet the Act's requirement of "refusal to participate." For the following reasons, we find Sardiga's actions fail to meet the Act's required refusal to participate. Because Sardiga has failed to establish an issue of material fact regarding whether he refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation, we affirm the summary judgment of the circuit court of Cook County.

## JURISDICTION

The trial court entered summary judgment in favor of Northern Trust with respect to count II of Sardiga's complaint on March 12, 2009, and denied Sardiga's motion to reconsider that judgment on September 1, 2009. The trial court subsequently issued a Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Jan. 1, 2006)) finding on October 15, 2009, and Sardiga filed his notice of appeal on October 21, 2009. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 304(a) governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 304(a) (eff. Jan. 1, 2006).

## BACKGROUND

Sardiga began working as a vice-president and senior financial consultant in Northern Trust's financial consulting group on February 28, 2004, and he was fired less than a year later on January 3, 2005. During his tenure at Northern Trust, Sardiga repeatedly complained to his supervisor, Thomas Hines, about what he believed to be illegal or improper practices there.

2

No. 1-09-2930

Sardiga's concerns touched upon several different aspects of Northern Trust's business practices. First, Sardiga questioned whether financial planners such as himself, who were not licensed to sell securities, should be presenting clients with investment sales literature. Sardiga approached Hines on multiple occasions to raise his concerns about securities licensing for financial planners at Northern Trust.

Second, Sardiga complained to Hines that members of the wealth strategy department were sometimes present during meetings between financial planners and their clients. Because financial planners' role is to give objective investment advice and wealth strategists instead seek to sell various securities, upon which sale they would earn a commission, Sardiga believed that the presence of both a financial planner and a wealth strategist at a client meeting posed a conflict of interest. Sardiga complained to Hines that the presence of wealth strategists at his meetings with clients interfered with his ability to provide independent, objective advice to the clients.

Third, Sardiga requested that Hines disclose to financial consulting clients that financial planners received bonuses derived from sales of Northern Trust financial products. Although Northern Trust's bonus policy did not state that this was the case, Sardiga believed that financial planners such as himself had their bonuses calculated in part based on how much sales revenue they generated for Northern Trust. Sardiga never received any bonus during the course of his employment with Northern Trust.

Fourth, Sardiga informed Hines that he believed Northern Trust's marketing literature to

3

be misleading. Subsequently, Hines allowed Sardiga to revise the marketing literature that he used in his presentations to clients.

Finally, Sardiga spoke with Hines regarding his concerns about a lack of confidentiality protections in Northern Trust's contact management system, a computerized database containing information about Northern Trust clients. The generally accepted practice at Northern Trust was to place confidential client information into the contact management system unless a client specifically requested otherwise. Members of various departments within Northern Trust had access to this data. After making Hines aware of his concerns, Sardiga continued to use the contact management system but did not input confidential information. Instead, he put in a note stating that he had conducted a confidential meeting with a the client and that notes from the meeting could be found in the confidential file.

Sardiga testified at his deposition that he did not consider Northern Trust's use of the contact management system to be illegal; he merely considered it to be a "poor business practice." In addition, Sardiga testified that he never spoke with anyone from Northern Trust's legal or compliance departments about his concerns with the system.

During Sardiga's tenure at Northern Trust, he reported his concerns about the various business practices only to Hines. Hines would usually respond by either saying that he would bring Sardiga's concerns to the attention of the legal department or informing Sardiga that the legal department had already approved of the practice and directing Sardiga to leave matters alone.

On December 5, 2004, Sardiga approached Hines and threatened to take his concerns to the National Association of Securities Dealers (NASD) if Hines did not adequately address Sardiga's concerns about Northern Trust's rules about who could sell securities. Specifically, Sardiga threatened to approach the NASD over the fact that financial planners at Northern Trust were not licensed. Northern Trust terminated Sardiga's employment on January 3, 2005, and Sardiga argues that his threat to contact the NASD was the catalyst for his termination.

Northern Trust presented a more complex version of events in its motion for summary judgment. In addition to Sardiga's repeated complaints about Northern Trust's business practices, Hines also received numerous complaints from employees and clients of Northern Trust about Sardiga's job performance. Sardiga's troubles began in his first weeks of employment with Northern Trust when he made a presentation that even he agrees was not of professional quality to a group of some 200 executives at a large prospective corporate client. Sardiga also arrived over half an hour late to an important client meeting. In addition, he made remarks to several different clients or prospective clients that the clients found offensive or objectionable and complained about to Northern Trust.

Hines documented complaints that he had received about Sardiga's performance in Sardiga's mid-year performance review in August 2004. As the year progressed, Hines informed his immediate supervisor and the human resources department at Northern Trust of continuing complaints against Sardiga and Hines' lack of confidence in Sardiga's ability to successfully complete client engagements. In October 2004, Hines gave Sardiga a written final warning and

performance improvement plan. Hines continued to receive complaints about Sardiga's performance and interaction with clients in November 2004, and he recommended that Northern Trust terminate Sardiga's employment.

Sardiga filed the instant lawsuit on August 12, 2005, with a two-count complaint. Count I alleged a common law claim of retaliatory discharge. Count II alleged a violation of the Illinois Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2004)). In support of his allegations under count II, Sardiga asserted that "Plaintiff refused to participate in Northern Trust's violations of public policy against its customers, to which Northern Trust responded by terminating Plaintiff in retaliation for his refusal." No more specific allegations appear in the complaint.

On March 12, 2009, the trial court granted summary judgment in favor of Northern Trust on count II of plaintiff's complaint. Count I remains pending with the circuit court. Sardiga filed a motion to reconsider the trial court's order granting summary judgment, which the trial court denied on September 1, 2009. The trial court made a Rule 304(a) finding on October 15, 2009, and Sardiga filed this timely appeal. Ill. S. Ct. R. 304(a) (eff. Jan. 1, 2006).

## ANALYSIS

On appeal, Sardiga argues that the trial court erred in granting summary judgment in favor of Northern Trust on count II of his complaint, which alleged a violation of the Illinois Whistleblower Act. 740 ILCS 174/20 (West 2004).

We review a trial court's granting of summary judgment *de novo*. *Zuccolo v. Hannah Marine Corp.*, 387 Ill. App. 3d 561, 564 (2008). Under this standard of review, we may affirm

the trial court's ruling on any basis in the record. *State Automobile Mutual Insurance Co. v. Habitat Construction Co.*, 377 Ill. App. 3d 281, 291 (2007).

Summary judgment is a drastic means of disposing of litigation and thus should only be used where the pleadings and other evidentiary material in the record, when viewed in a light most favorable to the nonmoving party, demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Zuccolo*, 387 Ill. App. 3d at 564. A genuine issue of material fact exists where either the material facts are disputed or the material facts are undisputed but reasonable people may draw different inferences from those facts. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

Sardiga argues on appeal that the trial court erred in finding that he failed to create a material issue of fact regarding whether he refused to participate in an illegal or improper activity in the course of his employment at Northern Trust. The Illinois Whistleblower Act provides: "An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20 (West 2004). Thus, in order to sustain a cause of action under the Act, a plaintiff must establish that (1) he refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation and (2) his employer retaliated against him because of that refusal. 740 ILCS 174/20 (West 2004).

The parties dispute what "refusing to participate" means under the Act. Sardiga argues that the statute does not require outright refusal; instead, he contends, repeated complaints and

questions about the activity in question should suffice. Northern Trust responds that the language of the statute is clear and that a plaintiff must refrain from participating in the activity in order to qualify under the Act. This is an issue of statutory interpretation, which we review *de novo*. *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 603 (2008). Thus, we must ascertain and give effect to the intent of the legislature. *Du Page*, 231 Ill. 2d at 603-04. the most reliable indicator of that intent is the statutory language, which must be given its plain and ordinary meaning. *Id.* at 604. We do not consider individual words and phrases in isolation; instead, we interpret them in light of other relevant provision and the statute as a whole. *Id.* When the language of the statute is unambiguous, we apply that language as written and without resort to other aids of statutory construction. *Taylor v. Pekin Insurance Co.*, 231 Ill. 2d 390, 395 (2008).

Here, the language of the statute is unambiguous. "Refusing to participate" means exactly what it says: a plaintiff who participates in an activity that would result in a violation of a state or federal law, rule, or regulation cannot claim recourse under the Act. 740 ILCS 174/20 (West 2004). Instead, the plaintiff must actually refuse to participate. Black's Law Dictionary defines "refusal" as "[t]he denial or rejection of something offered or demanded." Black's Law Dictionary 1394 (9th ed. 2009). Indeed, the very title of section 20, "Retaliation for certain refusals prohibited," suggests that not every refusal qualifies for protection under the Act. 740 ILCS 174/20 (West 2004). Furthermore, the Act protects employees who complain to a government agency about an activity that the employee reasonably believes constitutes a

violation of a state or federal law, rule, or regulation. 740 ILCS 174/15 (West 2004). Thus, "refusing" means refusing; it does not mean "complaining" or "questioning," as Sardiga would have us believe.

Sardiga argues that if we were to find that "refusing" does not mean "complaining," as we have done above, where a supervisor promises an employee that he will look into the legality of an activity after the employee complains about it, then this would create a loophole in the Act contrary to public policy. We are not persuaded by this argument. The Act protects employees who call attention in one of two specific ways to illegal activities carried out by their employer. It protects employees who either contact a government agency to report the activity or refuse to participate in that activity. An employee who does not perform either of the specifically enumerated actions under the Act cannot qualify for its protections. We fail to see how the plain meaning of the Act creates a loophole when the Act does not purport to cover the situation described in the instant case. When an employee complains to a supervisor, as opposed to a government agency, and is terminated as a result, a common law claim of retaliatory discharge arises, with which the Act does not interfere. *Callahan v. Edgewater Care & Rehabilitation Center, Inc.*, 374 Ill. App. 3d 630, 635 (2007) ("the enactment of the Whistleblower Act did not, either explicitly or implicitly, preempt or repeal the common-law right of action in favor of an employee discharged in retaliation for reporting illegal activities to her superior under circumstances where her discharge violates a clearly mandated public policy").

The parties have not cited, nor have we been able to find, any Illinois case law

interpreting the language of section 20. The only case discussing the meaning of section 20 that we have come across is *Robinson v. Alter Barge Line, Inc.*, 513 F.3d 668 (7th Cir. 2008), which supports our analysis above. In *Robinson*, the plaintiff, a dockhand, complained on multiple occasions to his employer that other crew members were using illegal drugs. 513 F.3d at 670. Shortly after the plaintiff made his third complaint, he was fired and he subsequently sued his employer for retaliatory discharge and a violation of the Act. *Id.* The court explained that the plaintiff's claim under the Act failed because plaintiff failed to establish that he refused to participate in the illegal activity. The court stated:

> "[The Act] forbids an employer to 'retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation.' Using illegal drugs would be such an 'activity' but there is no evidence that the plaintiff refused to engage in it. The district judge thought 'activity' could be stretched to include working with drug users or on boats on which drugs were being used, but the stretch is implausible, because neither would be an illegal activity. Nor did the plaintiff refuse to work because of the presence of drugs or drug users, or indeed for any reason. And, critically, there is no indication that he refused to use drugs himself. That is not to say that he did use them; there is no indication of that either. The point

is that he did not refuse to use them - as far as appears, he was never invited to use them. Anyway there is no indication that the defendant fired him *because* he refused to use drugs. (That would be bizarre conduct - firing an employee for refusing to use illegal drugs on the job.) And so he has no claim under the statute, as the district judge correctly concluded." (Emphasis in original.) *Id.*

Thus, we must determine whether the pleadings and evidence in the record establish that Sardiga refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation. Sardiga's brief and his pleadings below detail five areas about which Sardiga complained to Hines: (1) licensing of financial planners, (2) the presence of wealth strategists at meetings between financial planners and their clients, (3) lack of disclosure to clients regarding how financial planners' bonuses are calculated, (4) misrepresentations in marketing materials used by financial planners, and (5) use of the contact management system. However, the evidentiary materials in the record establish that Sardiga never actually refused to participate in any of these activities.

Sardiga comes closest to satisfying the refusal requirement of the Act in his dealings with the contact management system. He noted confidential client information in the contact management system by including notations that confidential meetings had taken place and that his notes from the meetings could be found in the confidential client files. This modified use of the system is a stretch in establishing a refusal, but assuming for the sake of argument that it

satisfies, Sardiga has not established the other two requirements of the Act, namely, that the activity "result[ed] in a violation of a State or federal law, rule, or regulation" and that he was terminated as a result of his refusal to participate in the activity. 740 ILCS 174/20 (West 2004). The pleadings, briefs, and the evidentiary material in the record do not establish that Northern Trust's standard use of the contact management system violates any state or federal law, rule or regulation. In his deposition, when asked whether he believed this use of the contact management system to be illegal, Sardiga testified that he thought it merely a "poor business practice." Refusal to participate in a poor business practice is not sufficient to satisfy the requirements of the Act. Furthermore, Sardiga does not argue that he was fired for refusing to follow Northern Trust's standard practices with respect to the contact management system. Instead, he admits that Hines allowed him to modify his use of the contact management system and deviate from Northern Trust's standard practices. Sardiga never argues that this modified use - or refusal to follow standard practices - resulted in his termination.

Instead, Sardiga argues that he was terminated because he threatened to raise his concerns with the NASD unless Hines answered Sardiga's questions about the legality of the other four complained of activities. However, Sardiga never argues that he actually refused to participate in any of the activities about which he complained to Hines or threatened to report to the NASD. As we discussed above, merely complaining about an activity - as opposed to actually refusing to participate in it - is not sufficient to entitle a plaintiff to relief under the Act. 740 ILCS 174/20 (West 2004); *Robinson*, 513 F. 3d at 670.

12

No. 1-09-2930

Sardiga attempts to make an end run around the plain meaning of the Act by arguing that Northern Trust should be estopped from arguing that Sardiga did not refuse to participate in what he perceived to be illegal and unethical activities during his employment with Northern Trust. Specifically, Sardiga argues that because Hines assured him either that the complained-of activities were legal or that Hines would inquire as to their legality, this prevented Sardiga from performing his own investigation or actually refusing to participate in the activities. We are not persuaded by this argument. First, this argument fails to take into account the burden of proof. In order to prevail under the Act, it is the *plaintiff* who must establish that his employer retaliated against him for his refusal to participate in a qualifying activity. 740 ILCS 174/20 (West 2004). Nothing in the plain language of the Act suggests a defendant employer bears the burden of proving that the plaintiff employee did not satisfy the requirements of the Act.

Second, we fail to see how Hines's assurances to Sardiga prevented Sardiga from independently verifying what Hines told him. Nothing in the record indicates that Sardiga could not approach or communicate with Northern Trust's legal or compliance department with his questions; instead, he merely chose not to do so. What is more, Sardiga does not show how Hines's assurances prevented him from refusing to participate in activities that he believed were deceptive and illegal. Sardiga repeatedly argues, both here on appeal and in his pleadings and motions below, that Hines would not answer Sardiga's questions to his satisfaction. However, Sardiga does not explain how this prevented Sardiga from actually refusing to participate.

Third, Sardiga has not shown how the elements of estoppel are satisfied in the instant

13

case. Indeed, Sardiga does not even mention the elements in his brief. In order to establish estoppel, Sardiga must show that (1) Hines misrepresented or concealed material facts; (2) Hines knew at the time he made the representations that they were untrue; (3) Sardiga did not know that the representations were untrue when Hines made them or when Sardiga acted upon them; (4) Hines reasonably expected that Sardiga would act upon those representations; (5) Sardiga reasonably relied upon Hines's representations to his detriment; and (6) Sardiga would be prejudiced by his reliance on the representations if Hines were permitted to deny their truth. *Campos v. Campos*, 342 Ill. App. 3d 1053, 1066 (2003). The record does not clearly establish that Hines misrepresented or concealed material facts or that he knew at the time he made the representations that they were untrue. More importantly, the record does not establish that Sardiga would be prejudiced by his reliance on the representations if Hines were permitted to deny their truth. Sardiga argues that he was prejudiced because he relied on Hines's assurances regarding the legality of the complained of activities. Sardiga maintains that he did not refuse to participate in the purportedly illegal activities because Hines assured him that they were proper, despite Sardiga's lingering doubts about their legality. As a result, Sardiga argues that this reliance precluded him from maintaining a successful claim under the Act.

We are not persuaded by Sardiga's reliance argument. As noted above, Sardiga has not adequately explained how Hines's assurances to him prevented him from ascertaining the legality of the complained of activities through other methods, for instance, seeking guidance from Northern Trust's legal or compliance department.

No. 1-09-2930

Accordingly, we find that the trial court did not err in granting summary judgment in favor of Northern Trust on count II of Sardiga's complaint.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

15

No. 1-09-2930

---

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

DARREN SARDIGA,

        Plaintiff-Appellant,

    v.

THE NORTHERN TRUST COMPANY,

        Defendant-Appellee.

---

No. 1-09-2930

Appellate Court of Illinois
First District, Second Division

March 15, 2011

---

JUSTICE HARRIS delivered the opinion to the court.
Justices Karnezis and Connors concurred in the judgment and opinion.

---

Appeal from the Circuit Court of Cook County.

The Honorable Allen S. Goldberg, Judge Presiding.

---

Barry A. Gomberg & Associates, Ltd., 53 West Jackson Boulevard, Suite 1350, Chicago, IL 60604, (Barry A. Gomberg, of counsel), for APPELLANT.

Vedder Price P.C., 222 North LaSalle Street, Suite 2600, Chicago, IL 60601-1003, (Edward C. Jepson, Jr. and Elizabeth N. Hall, of counsel), for APPELLEE.

---