2024 IL App (1st) 230734-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DIVISION
March 25, 2024

No. 1-23-0734

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| RODNEY BLISSET, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 L 7977 |
| | ) | |
| THE CITY OF CHICAGO, | ) | The Honorable |
| | ) | Patrick J. Sherlock, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1   *Held:*  The appellate court affirms the trial court's entry of summary judgment in favor of the defendant based on the plaintiff's failure to produce evidence showing a genuine issue of material fact on all essential elements of a cause of action under the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2020)).

¶ 2   The plaintiff, Rodney Blissett, appeals from the trial court's granting of summary judgment in favor of the defendant, the City of Chicago (City), on the plaintiff's one-count complaint under the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2020)). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4   The plaintiff is a police officer who retired from the Chicago Police Department (CPD) in

September 2020 after 30 years of employment. He rose in rank throughout his tenure, and in 2015 he achieved the rank of captain, the highest career service rank for a police officer within CPD. Soon thereafter he was elevated to commander, a position exempt from the career service in which he served at the discretion of the superintendent of police. From 2016 until January 31, 2020, he served as commander of detectives for Area South. On January 30, 2020, the plaintiff was informed that he was being demoted from commander back to captain, effective the following day. He then served as captain (assigned initially as commanding officer of the violence reduction initiative and then of the alternative response unit) until his retirement approximately seven months later.

¶ 5     In 2017, while he was commander of detectives for Area South, an incident occurred in which an off-duty police sergeant shot a young autistic man. This shooting was investigated by detectives in Area South. One of the Area South detectives involved was Isaac Lambert, and the plaintiff was Lambert's commanding officer. In February 2019, Lambert was transferred out of the Area South detectives division to the patrol division. The decision to transfer Lambert was made by Melissa Staples, who was then chief of detectives for CPD. In March 2019, Lambert filed a lawsuit against the City, alleging that his transfer was in wrongful retaliation for his refusal to draft false reports to cover up misconduct in the police shooting. The attorneys who represented the City in that lawsuit by Lambert were Melanie Neely and Johner Wilson.

¶ 6     On July 26, 2019, attorneys Neely and Wilson met with the plaintiff to discuss Lambert's case against the City. At his deposition in the instant case, the plaintiff explained that he told Neely and Wilson in that meeting that he had no involvement in Lambert's transfer, other than being the person who informed Lambert of it. He elaborated that in February 2019, a deputy chief had told him that Staples was transferring Lambert out of the detectives division. The plaintiff asked the deputy chief why Lambert was being transferred. The deputy chief replied that Staples had not

given him a reason, and accordingly he could not give the plaintiff a reason.

¶ 7    On September 19, 2019, another meeting occurred involving the plaintiff, Neely, and Wilson, the purpose of which was to discuss a different lawsuit not involving Lambert. The plaintiff testified that Lambert's name had come up during the discussion of that case, and Neely began asking the plaintiff several questions about Lambert and whether the plaintiff had any problems with him. After about three questions concerning Lambert, the plaintiff asked them why they were inquiring about Lambert. Neely responded, " 'Well, we were told by Chief Staples that you told her that Isaac Lambert was a poor employee and causing problems in your unit.' " They further indicated that Staples said that was the basis for her transferring Lambert out of the detectives division. The plaintiff testified that, upon hearing this,

> "I came forward and I just told [Neely] and [Wilson] that the chief detective is lying. I never had a conversation with her about Isaac Lambert. I never said he was a poor employee. I never said that I was having problems with him and they needed to get this straight before, you know, it went to court."

¶ 8    At some point (the date is disputed, but the plaintiff asserts it was around October 2019), Staples had a conversation with then-superintendent of police Eddie Johnson in which she expressed dissatisfaction with the plaintiff's job performance as Area South commander of detectives. Staples stated that the plaintiff was not keeping up with the cases in the way she wanted him to, and she was not happy with the area's rate of clearing investigations. Johnson testified that he did not move the plaintiff in response to Staples' concerns, because he did not want to make that change while CPD was actively considering a restructuring of its detective areas.

¶ 9    In early December 2019, Charlie Beck took over for Johnson and became interim-superintendent of police. That month, Beck made the decision to remove the plaintiff as

commander of detectives for Area South, to return him to his career service rank of captain, and to transfer him out of the detectives division. According to Beck, he made this decision as part of the comprehensive restructuring of CPD that was occurring at that time, which involved numerous changes in the personnel who filled leadership positions within CPD. One such change involved Brendan Deenihan becoming chief of detectives in place of Staples. Beck testified that Deenihan had recommended to him that a different commander of detectives be installed in place of the plaintiff, although Deenihan had not recommended that the plaintiff be transferred out of the detectives division entirely. The deposition testimony of Beck, Deenihan, chief of staff Robert Boik, and first deputy superintendent Anthony Riccio indicated that they were involved in advising Beck and concurred in the decision to remove the plaintiff from his position. Their testimony further indicated that Staples was not involved in the decision, as she was also being demoted from her position as chief of detectives at the time these decisions were being made.

¶ 10    On January 30, 2020, CPD publicly announced its comprehensive restructuring. That same day, Riccio pulled the plaintiff aside after a meeting and informed him that interim-superintendent Beck was demoting him. On January 31, 2020, the plaintiff was ordered to go to the CPD human resources office to turn in his star and be formally demoted to captain, which he did.

¶ 11    On February 4, 2020, the plaintiff contacted Neely by phone and asked her if she had ever talked to Staples about the fact that the plaintiff had said that Staples was lying about the reason for Lambert's transfer. Neely responded, " 'Well, yes, you know, it was part of the investigation so, yeah, we talked to her.' " The plaintiff asked Neely what Staples had said in response, and Neely's answer was that Staples said she had " 'misremembered.' " The plaintiff then told Neely he had been demoted in retaliation for the statement he made to her about Staples. He explained to Neely that he never had any complaints about his performance and that he believed Staples had

orchestrated his demotion by recommending it to the first deputy or deputy chief because of his statement to the City's attorneys.

¶ 12       On July 29, 2020, the plaintiff filed the instant complaint, alleging that the City had committed a violation of the Whistleblower Act (*id.*) when he was demoted from commander to captain based on his reporting to the City's attorneys that Staples was lying about the reason for Lambert's transfer. The complaint alleged that the plaintiff had reasonable cause to believe that the information he was reporting to Neely and Wilson disclosed a violation of Illinois law, which was that Staples had committed or was attempting to commit perjury. It further alleged that the plaintiff refused to participate in a conspiracy or an attempt to commit or suborn perjury about the reason for Lambert's transfer, by refusing to lie as Staples had in the City's defense of Lambert's case. It alleged that the plaintiff disclosed or attempted to disclose public corruption or wrongdoing by reporting to the City's attorneys that Staples was lying about the reasons for Lambert's transfer.

¶ 13       Following discovery, the City filed a motion for summary judgment, which the trial court granted on three principal grounds. First, the trial court reasoned that the plaintiff's statement to the City's attorneys did not amount to his "refusing to participate" in illegal activity under section 20 of the Whistleblower Act (*id.* § 20), as there was no evidence that anyone on behalf of the City asked or suggested that he commit perjury or otherwise corroborate Staples' statements about the reason for Lambert's transfer. Second, the trial court reasoned that the plaintiff's statement to the City's attorneys was not information that he reasonably believed "discloses a violation of State or federal law, rule, or regulation" (*id.* § 15(b)), as he was aware that Staples' statements to the City's attorneys were not under oath and were not illegally made. Finally, the trial court found that the plaintiff had failed to present any evidence of a causal connection between his statements to the City's attorneys that Staples was lying and his eventual demotion several months later.

¶ 14                                  II. ANALYSIS

¶ 15       The plaintiff appeals the above ruling, arguing that the trial court erred by granting the City's motion for summary judgment. A motion for summary judgment is appropriately granted where the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). A court considering such a motion must construe the record strictly against the movant and liberally in favor of the nonmovant, and the motion should be granted only where the movant's right to judgment is clear and free from doubt. *Givens v. City of Chicago*, 2023 IL 127837, ¶ 46. Where the nonmoving party is the plaintiff, he does not need to prove his case to avoid summary judgment; however, he must present some evidentiary facts in support of each element of his cause of action that would arguably entitle him to a judgment at trial. *Marquardt v. City of Des Plaines*, 2018 IL App (1st) 163186, ¶ 16. Unsupported conclusions, opinions, or speculation are not sufficient to demonstrate a genuine issue of material fact. *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 20. Where the court determines that a plaintiff is unable to establish a necessary element of his cause of action, summary judgment in favor of the defendant is proper. *Molitor v. BNSF Ry. Co.*, 2022 IL App (1st) 211486, ¶ 36. A trial court's granting of summary judgment is reviewed *de novo*. *Givens*, 2023 IL 127837, ¶ 46.

¶ 16       The statutory sections upon which the plaintiff relies are not delineated in the complaint, but the parties and the trial court agree that his claim is premised on sections 15(b), 20, and 20.1 of the Whistleblower Act. 740 ILCS 174/15(b), 20, 20.1 (West 2020). Section 15(b) provides that "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." *Id.* § 15(b). Section 20 provides

that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation, including, but not limited to, violations of the Freedom of Information Act." *Id.* § 20. And section 20.1 provides:

> "Any other act or omission not otherwise specifically set forth in this Act, whether within or without the workplace, also constitutes retaliation by an employer under this Act if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing." *Id.* § 20.1.

¶ 17                                    *A. Section 20*

¶ 18       Following the order of analysis undertaken by the trial court and the plaintiff, we begin with the question of whether the plaintiff's conduct in this case constituted "refusing to participate" in illegal activity for purposes of section 20 of the Whistleblower Act. *Id.* § 20. As indicated above, the trial court found that the plaintiff had failed to present any evidence that anyone asked him to participate in an activity that would violate a state or federal law, rule, or regulation. The trial court cited the plaintiff's deposition testimony, in which he expressly testified that he was not asked to lie under oath by Neely, Wilson, Staples, or anyone else from the City. The trial court reasoned that, although there was no doubt that the plaintiff believed that Staples had lied about the circumstances involving Lambert's transfer, his complaining to the City's attorneys and advising them to get to the bottom of the representations before going to court does not amount to his refusal of a demand to lie under oath or to corroborate Staples' statement.

¶ 19       The plaintiff makes a three-part argument why the trial court erred in its analysis of a claim under section 20. First, he contends that the evidence is sufficient to enable a jury to find "an implied invitation to enter into a conspiracy to give false testimony about the reasons for Lambert's

demotion." Specifically, he cites the fact that in their first meeting on July 26, 2019, he told Neely and Wilson that he had no involvement in the decision to demote Lambert; however, on September 19, 2019, those same attorneys "approached him again and said they were 'told by Chief Staples that you told her that Isaac Lambert was a poor employee and causing problems in your unit,' and that this communication was the basis of Lambert's transfer." The plaintiff argues that a reasonable jury could infer, from the circumstances of lawyers telling him what he allegedly said after he had already told them he had nothing to do with the transfer, that he was being asked to corroborate Staples' false statement in the litigation.

¶ 20        Second, the plaintiff emphasizes that his statement involved the scuttling of future illegal activity (*i.e.*, future perjury by Staples) as opposed to an activity in which he could participate imminently. Third, he argues that his statement to the City's attorneys about Staples was in fact an unambiguous refusal by him to participate in illegal activity by lying under oath or helping Staples lie under oath.

¶ 21        We reject the plaintiff's argument and conclude that no genuine issue of material fact exists on the element of his "refusing to participate" in illegal activity for purposes of section 20 of the Whistleblower Act. *Id.* The case law interpreting section 20 makes clear that an actual refusal to participate in illegal activity is required, as opposed to complaining about, questioning, or protesting such activity. *Sardiga v. Northern Trust Co.*, 409 Ill. App. 3d 56, 62 (2011); *Collins v. Bartlett Park District*, 2013 IL App (2d) 130006, ¶¶ 27-28. This court quoted the definition of " 'refusal' as '[t]he denial or rejection of something offered or demanded.' " *Sardiga*, 409 Ill. App. 3d at 62 (quoting Black's Law Dictionary 1394 (9th ed. 2009)).

¶ 22        We find in this case that the evidence relied upon by the plaintiff is simply insufficient for a reasonable jury to conclude that the City's attorneys were impliedly inviting him to enter into a

conspiracy to give false testimony, in which he refused to participate. Instead, this evidence merely shows the City's attorneys, in the relatively early stages of investigating Lambert's lawsuit, asking a few questions to potentially corroborate, cross-check, or understand testimony by multiple witnesses involved in a case. We find no evidentiary support for the plaintiff's suggestion that the attorneys had a nefarious purpose of getting the plaintiff to give false testimony in Lambert's case. A jury would be required to engage in significant speculation to reach such a conclusion.

¶ 23     We similarly conclude that too much speculation is required to connect the attorneys' asking about the plaintiff's impressions of Lambert as an employee to his belief that false testimony would be presented by any person in the future. If the plaintiff had a good-faith basis for believing that false testimony would be presented in Lambert's case at some point in the future, facts showing the reasonableness of this belief were never made part of the summary judgment record. The mere fact that the City's attorneys asked questions about the topic in the context of cross-checking witness testimony early in the case is insufficient to raise a genuine issue of material fact that any person wanted or expected the plaintiff to participate in the giving of false testimony, which he refused to do.

¶ 24     Accordingly, we agree with the trial court that the plaintiff has failed to come forth with evidence of his "refusing to participate" in an activity that would violate the law for purpose of establishing a claim under section 20 of the Whistleblower Act. 740 ILCS 174/20 (West 2020). Summary judgment in favor of the City is therefore proper as to this aspect of the plaintiff's claim.

¶ 25                                             *B. Section 15(b)*

¶ 26     We next turn to the question of whether the plaintiff's statement to the City's attorneys was information which he had "reasonable cause to believe *** discloses a violation of a State or federal law, rule, or regulation," for purposes of section 15(b) of the Whistleblower Act. *Id.* §

15(b). The trial court reasoned that the plaintiff had not satisfied this element, because he testified in his deposition that he was aware that Staples' statements were not made under oath and that it was not illegal for her to make them, even if it may have been unethical or immoral to do so.

¶ 27    On appeal, the plaintiff argues that he was disclosing to the City's attorneys that Staples had an apparent plan to give testimony that, as represented to him by the attorneys, would constitute perjury. The plaintiff contends that he "clearly saw himself as resisting and exposing Staples' attempt to enter into a conspiracy; he described himself as refusing 'to go along with the lie' and warned that it would constitute perjury." He argues that a reasonable jury could find that he reasonably believed that coordinating with Staples to lie under oath in court would violate state law, that Staples was attempting to pressure him into entering into a conspiracy to commit perjury, and that lying under oath in conspiracy with Staples would in fact violate state law.

¶ 28    As stated above, section 15(b) prohibits an employer from "retaliat[ing] against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." *Id.* What matters under section 15(b) is whether a plaintiff's belief that he or she is disclosing a violation of the law is reasonable, not whether it is accurate. See *Coffey v. DSW Shoe Warehouse, Inc.*, 145 F. Supp. 3d 771, 778 (N.D. Ill. 2015).

¶ 29    For the same reasons we discussed concerning section 20, we conclude that the evidence is insufficient to show a genuine issue of material fact about whether the plaintiff had a reasonable basis for believing that Staples truly planned to commit perjury, which he was disclosing by his statement to the City's attorneys. Again, under the facts in the summary judgment record, it simply requires too much speculation to conclude from a few limited statements and questions by the City's attorneys that the plaintiff had a reasonable, good-faith belief that false testimony would be

presented under oath at some point in the future.

¶ 30      We therefore agree with the trial court that the plaintiff has failed to come forth with evidence that he had "reasonable cause to believe that the information discloses a violation" of Illinois law for purposes of section 15(b) of the Whistleblower Act. 740 ILCS 174/15(b) (West 2020). Summary judgment in favor of the City is proper as to this aspect of the plaintiff's claim also.

¶ 31      *C. Section 20.1*

¶ 32      Finally, we address the plaintiff's argument that section 20.1 of the Whistleblower Act (*id.* § 20.1) provides a basis by which he may recover damages, even if the evidence is insufficient to establish a claim under sections 15(b) or 20. Section 20.1 provides:

> "Any other act or omission not otherwise specifically set forth in this Act, whether within or without the workplace, also constitutes retaliation by an employer under this Act if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing." *Id.* § 20.1.

The plaintiff argues that section 20.1 is "broader" than the other two sections relied upon. He contends that he engaged in protected activity under section 20.1 by exposing "public corruption or wrongdoing" when he accused Staples of lying about Lambert in order to avoid liability.

¶ 33      In its summary judgment order, the trial court acknowledged that the plaintiff's claim was in part brought under section 20.1, but it did not specifically address this section. The City's position is that section 20.1 does not provide an independent basis under which the plaintiff may assert a private right of action. The City contends that, unlike sections 15 and 20 addressed above, section 20.1 does not define actions by employees that are protected from retaliation; rather, it defines actions by employers that constitute retaliation.

¶ 34     This argument requires statutory interpretation. The goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Schultz v. St. Clair County*, 2022 IL 126856, ¶ 19. The most reliable indication of the legislature's intent is the language of the statute, given its plain and ordinary meaning. *Goldfine v. Barack, Ferrazzano, Kirschbaum & Perlman*, 2014 IL 116362, ¶ 21. Words and phrases are not considered in isolation, but rather they are interpreted in light of the other relevant provisions of the statute. *People ex rel. Madigan v. Wildermuth*, 2017 IL 120763, ¶ 17. When the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation. *Goldfine*, 2014 IL 116362, ¶ 21.

¶ 35     We agree with the argument advanced by the City and conclude that the legislature did not intend section 20.1 to serve as a basis of liability independent of sections 15 or 20 of the Whistleblower Act. 740 ILCS 174/15, 20, 20.1 (West 2020). The plain language of section 20.1 makes clear that it is defining the scope of acts or omissions that "constitute[ ] retaliation by an employer." *Id.* § 20.1 For example, in the context of the common law tort of retaliatory discharge, no employer action short of actual termination is cognizable. See *Bajalo v. Northwestern University*, 369 Ill. App. 3d 576, 582-84 (2006). By contrast, in employment discrimination cases, where employer action short of termination is cognizable, the employer's action must nevertheless be "materially adverse" to be actionable. See *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 919 (2010). A materially adverse employment action is one that significantly alters the terms and conditions of the employee's job. *Id.* Examples include actions involving hiring, denial of promotions, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits. *Id.* However, not everything that makes an employee unhappy is an adverse employment action; otherwise, minor or trivial employment actions could form the basis of a discrimination suit. *Id.* at 919-20.

¶ 36 We interpret section 20.1 to reflect a statutory application of principes similar to those above, by providing a definition of what conduct constitutes "retaliation" by an employer for purposes of a claim under the Whistleblower Act. 740 ILCS 174/20.1 (West 2020). It is not, as suggested by the plaintiff, an attempt to broaden the scope of protected activities by employees beyond those set forth in sections 15 or 20.

¶ 37 Further clear indication that section 20.1 is not an independent basis of a cause of action for damages is found in section 30 of the Whistleblower Act, which in pertinent part states: "If an employer takes any action against an employee in violation of Section 15 or 20, the employee may bring a civil action against the employer for all relief necessary to make the employee whole ***." *Id.* § 30. The fact that section 30 expressly authorizes an employee to bring a civil action against an employer for a violation of sections 15 or 20, without mentioning section 20.1, requires the conclusion that no private right of action exists under section 20.1 alone. See *Metzger v. DaRosa*, 209 Ill. 2d 30, 44 (2004) ("Where, as here, the legislature has expressly provided a private right of action in a specific section of the statute, we believe the legislature did not intend to imply private rights of action to enforce other sections of the same statute."). As section 20.1 provides no independent basis of liability, summary judgment in favor of the City is proper as to any purported claim by the plaintiff under that statute.

¶ 38 Based on our determination that the City is entitled to summary judgment in its favor on all aspects of the plaintiff's claim for the reasons discussed above, we have no reason to consider also the parties' arguments as to causation.

¶ 39                                     III. CONCLUSION

¶ 40 For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 41 Affirmed.