# Illinois Official Reports

## Supreme Court

***Roberts v. Board of Trustees of Community College District No. 508,***
**2019 IL 123594**

| | |
|---|---|
| Caption in Supreme Court: | KENRICK ROBERTS, Appellant, v. THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 508, Appellee. |
| Docket Nos. | 123594, 123599 cons. |
| Filed | May 23, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. James Snyder, Judge, presiding. |
| Judgment | Appellate court judgment affirmed in part and reversed in part. Circuit court judgment affirmed. Cause remanded. |
| Counsel on Appeal | James P. Daley, James D. Thomas, and David M. Novak, of Jackson Lewis P.C., of Chicago, for appellant.<br><br>Brian R. Holman and Dennis H. Stefanowicz Jr., of Holman & Stefanowicz, LLC, of Chicago, for appellee. |

Justices        CHIEF JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justices Thomas, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion.

Justice Neville took no part in the decision.

**OPINION**

¶ 1      Plaintiff, Kenrick Roberts, brought this action in the circuit court of Cook County to recover damages from defendant, the Board of Trustees of Community College District No. 508, d/b/a City Colleges of Chicago, following his termination as director of medical programs at Malcolm X College, one of seven institutions of higher education operated by defendant. Plaintiff's complaint, as amended, was in three counts. Count I asserted a cause of action for retaliatory discharge. Count II alleged violation of section 20 of the Whistleblower Act (740 ILCS 174/20 (West 2014)). Count III sought recovery based on wrongful termination.

¶ 2      Defendant moved to dismiss the retaliatory discharge and Whistleblower Act counts pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2014)). The circuit court granted that motion, dismissed both counts with prejudice, and ultimately made an express written finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason for delaying the appeal.

¶ 3      On appeal, the appellate court affirmed the circuit court's dismissal of plaintiff's Whistleblower Act claim but reversed its dismissal of his claim for retaliatory discharge. 2018 IL App (1st) 170067. Both plaintiff and defendant then petitioned this court for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Apr. 1, 2018). We granted their respective petitions and consolidated the appeals.

¶ 4      For the reasons that follow, we hold that the appellate court was correct to affirm dismissal of plaintiff's Whistleblower Act claim but that it erred in reversing the dismissal of plaintiff's claim for retaliatory discharge. We therefore affirm in part, reverse in part, and remand for further proceedings.

¶ 5                           BACKGROUND

¶ 6      We take the following statement of facts largely from the appellate court's recitation of the allegations in plaintiff's second amended complaint.

¶ 7      Defendant operates seven colleges located in Chicago, one of which is Malcolm X College (Malcolm X). At all relevant times, plaintiff was the director of medical programs at Malcolm X. As director of medical programs, plaintiff's job duties and responsibilities included vetting potential instructors to teach various courses and curricula. Plaintiff was also responsible for ensuring that instructors assigned to teach various courses, including but not limited to HeaPro 101, met the appropriate accreditation standards and had the correct qualifications to teach their assigned courses and curricula. HeaPro 101 includes the instruction of phlebotomy and electrocardiograms (EKG).

¶ 8    On or about January 15, 2015, after becoming aware of complaints that the instructor assigned to teach HeaPro 101 was unqualified, plaintiff met with that instructor to discuss her qualifications. During the course of their meeting, the instructor admitted that she had never taught phlebotomy before, that she was unfamiliar with the requirements and certifications necessary to become a phlebotomist, that phlebotomy was not her area of expertise, and that she was not certified in phlebotomy.

¶ 9    Plaintiff concluded that the instructor was not qualified to teach HeaPro 101 or the related curricula. After reaching this conclusion, he e-mailed his direct supervisors, Dr. Micah Young, the dean of health sciences and career programs at Malcolm X, and Dr. Mario De La Haye, the associate dean of health sciences and career programs at Malcolm X, to complain that an unqualified instructor had been assigned to the faculty without his input. His e-mail stated:

> "In compliance with the City Colleges of Chicago policy and the College of Health Science credentialing standards and requirements it is my responsibility as Program Director of HeaPro 101 to review, evaluate and approve the recommendation of each faculty member that is approved to teach in a program which I am the director. Taking into consideration I had no input into the department decision to appoint a nurse to teach HeaPro 101 without my review of the credentials and necessary certifications and licenses put our programs and students at risk. Please note that this is a breach of the standards that were developed to ensure that students obtain the best outcomes moving forward with their education in the medical field. Please note I am very concerned about the direction in which we are traveling and wish to discuss this matter."

After receiving plaintiff's e-mail, Dr. Young e-mailed Dr. Anthony Munroe, the president of Malcolm X, as well as the college's provost, relaying plaintiff's concerns about the unqualified instructor assigned to teach HeaPro 101 and questioning how to address the issue. Plaintiff also made verbal complaints directly to Dr. Munroe regarding the assignment of an unqualified instructor to HeaPro 101. He also protested that he had been intentionally excluded from the selection process and stated that he refused to support the assignment.

¶ 10    On February 25, 2015, plaintiff e-mailed Dr. Munroe; Dr. Christopher Robinson-Easley, the vice president of the college; and the college's associate provost, stating that the instructor had admitted to never having taught phlebotomy before. The e-mail further indicated that plaintiff had since learned that this unqualified instructor had abandoned HeaPro 101 and advised that another unqualified instructor, one who was not properly certified to teach the EKG portion of the course, had been assigned to complete the remainder of HeaPro 101. Plaintiff also continued to complain that he had been excluded from the selection process of both unqualified instructors despite his job responsibilities as director of medical programs to vet and ensure the qualifications of the assigned instructors.

¶ 11    Upon receipt of plaintiff's e-mail, Dr. Robinson-Easley, who plaintiff alleges was responsible for selecting and assigning the unqualified instructors to teach HeaPro 101, requested that plaintiff meet with her. After receiving Dr. Robinson-Easley's request, plaintiff e-mailed the executive director of labor and employee relations for the college, stating that he wanted to document that he felt uncomfortable about meeting with Dr. Robinson-Easley in light of his complaints about the unqualified instructor.

¶ 12    Despite his discomfort, plaintiff met with Dr. Robinson-Easley the same day. According to plaintiff, his complaints upset her, and she was unwilling to address the problem. Thereafter,

he was kept out of important meetings, discussions, and decisions regarding programs that were within his area of responsibility as director of medical programs.

¶ 13 Plaintiff continued to complain to Dr. Munroe about the unqualified HeaPro 101 instructors and defendant's failure to address and rectify the problem. On June 15, 2015, the newly hired associate dean of health sciences and career programs at Malcolm X, Roy Walker, told plaintiff that Dr. Robinson-Easley "has an axe to grind against [him]" because of his complaints regarding the assignment of the unqualified instructors.

¶ 14 On June 28, 2015, Dr. Munroe instructed plaintiff to file an equal employment opportunity complaint against Dr. Robinson-Easley for retaliating against him by keeping him out of important meetings and decisions in connection with his complaints about the assignments of unqualified instructors. Plaintiff filed the equal employment opportunity complaint form the same day. Approximately six weeks later, on August 7, 2015, plaintiff was advised that he was terminated from his director of medical programs position. No reason for the termination was given. Up to that point, plaintiff had never been advised nor received any indication that there were any issues or concerns regarding his performance or conduct. He had never been reprimanded, never been given notice of the need for improvement of his performance, and never been notified that he had engaged in any type of improper conduct. This litigation followed.

¶ 15 As noted at the outset of the opinion, plaintiff's complaint, as amended, was in three counts. In count I, a claim for common-law retaliatory discharge, plaintiff alleges the Higher Education Act of 1965 (HEA) (20 U.S.C. § 1070 *et seq.* (2012)) establishes a clearly mandated public policy of enabling students to obtain the benefits of a postsecondary education through the financial help of federal and state-funded programs and that defendant violated this public policy when it terminated plaintiff due to his complaints regarding the improper appointment of unqualified instructors, which he feared violated various provisions of the HEA and defrauded students.

¶ 16 In count II, which alleges a violation of section 20 of the Whistleblower Act (740 ILCS 174/20 (West 2014)), plaintiff claims he was terminated in retaliation for his refusal to support defendant's decision to appoint unqualified instructors. Plaintiff further contends the appointment of the unqualified instructors violated various provisions of the HEA and defrauded students.

¶ 17 In count III, for wrongful termination, plaintiff asserts he was terminated in retaliation for filing an equal employment opportunity complaint against Dr. Robinson-Easley regarding his complaints about the assignment of the unqualified instructors.[1]

¶ 18 Defendant filed a motion to dismiss counts I and II pursuant to section 2-615 of the Code of Civil Procedure. The circuit court granted the motion and dismissed both counts with prejudice. Count III, the wrongful termination claim, was not challenged and remains pending.

¶ 19 At that time, plaintiff did not request leave to amend his complaint and, instead, requested the inclusion of language pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). The circuit court granted plaintiff's request and entered an order finding that there was no just

---

[1]Only count III, the wrongful termination claim, alleges that defendant retaliated against plaintiff for filing an equal employment opportunity complaint. The filing of the equal employment opportunity complaint is not the basis of count I, the retaliatory discharge claim.

reason to delay the appeal. Plaintiff then filed a timely notice of appeal. As noted above, the appellate court reversed the dismissal of the retaliatory discharge claim alleged in count I but affirmed the dismissal of the whistleblower claim under count II. 2018 IL App (1st) 170067. The viability of count III, for wrongful termination, was not raised nor addressed.

¶ 20                                                    ANALYSIS

¶ 21     The parties' consolidated appeals from the appellate court's judgment call on us to consider whether counts I and II of plaintiff's complaint, as amended, were properly dismissed by the circuit court pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2014)). A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint. In reviewing the sufficiency of the complaint, we take all well-pleaded facts as true and construe the allegations in the complaint in the light most favorable to the plaintiff. A cause of action should not be dismissed under section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recover. Our review of an order granting a section 2-615 motion to dismiss is *de novo*. *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 61.

¶ 22     We begin our discussion with the viability of plaintiff's claim for retaliatory discharge in count I. Under Illinois common law, an employer may discharge an employee-at-will with or without cause. *Barr v. Kelso-Burnett Co.*, 106 Ill. 2d 520, 525 (1985). Courts have acknowledged, however, that an employer's ability to discharge an employee without cause in an oppressive manner could undermine a significant public policy. *Michael v. Precision Alliance Group, LLC*, 2014 IL 117376, ¶ 30. To maintain a proper balance between an employer's interests in efficiently and profitably operating a business, society's interest in assuring its public policies are followed, and an employee's interest in earning a livelihood, the courts have recognized a cause of action for retaliatory discharge. *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 129 (1981). It is a limited and narrow exception to the general rule that employees are at-will. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 505 (1991).

¶ 23     To state a claim for retaliatory discharge, an employee must plead that (1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities, and (3) the discharge violates a clearly mandated public policy. *Michael*, 2014 IL 117376, ¶ 31. In the case before us, defendant does not challenge the sufficiency of plaintiff's complaint with regard to the first two of these requirements. Its contention is that count I was fatally defective and therefore properly dismissed because plaintiff fails to include adequate allegations regarding requirement three, that the discharge of plaintiff violated a clearly mandated public policy.

¶ 24     To succeed in a retaliatory discharge claim, the public policy alleged by a plaintiff must be found in the state or federal constitutions and statutes and, when they are silent, in Illinois or federal case law. *Palmateer*, 85 Ill. 2d at 130; see *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502 (1985) (this court found a clearly mandated public policy enunciated in federal legislation and regulations, which were national in scope).

> "The fact that a constitutional or statutory provision is cited in the complaint, however, does not give rise to a retaliatory-discharge cause of action. The test for determining whether the complaint states a valid cause of action is whether the public policy clearly

mandated by the cited provisions is violated by the plaintiff's discharge." *Barr*, 106 Ill. 2d at 527.

¶ 25　　Plaintiff's cause of action is predicated on the proposition that Illinois has a clearly mandated public policy that institutions of higher learning must provide students the ability to obtain the benefits of a postsecondary education through financial help from federal and state-funded programs.[2] In support of this allegation, plaintiff cites Title IV of the HEA (20 U.S.C. ch. 28, subch. IV (2012)), whose stated purpose is "to assist in making available the benefits of postsecondary education to eligible students *** in institutions of higher education" by establishing various loan and grant programs. *Id.* § 1070. Plaintiff contends his discharge for not supporting the assignment of the instructors undermined this public policy because the appointment of the instructors violated various provisions of the HEA, which placed Malcolm X students at risk of losing their HEA funding, and defrauded students.

¶ 26　　In challenging plaintiff's retaliatory discharge allegations in count I, defendant contends that plaintiff pleaded a "labyrinth of hundreds of pages of federal statutes and regulations," none of which provide a right to public aid for postsecondary education nor "yield any specific requirements to which faculty must adhere." Therefore, in defendant's view, plaintiff failed to cite a specific provision that clearly mandates his asserted public policy.

¶ 27　　"Established principles of judicial review counsel against consideration of issues which are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided." *In re Estate of Boyar*, 2013 IL 113655, ¶ 36; see *Peach v. McGovern*, 2019 IL 123156, ¶ 64. The parties here present and argue such an issue. Even if we were to agree with plaintiff and find that the HEA clearly mandates a public policy that institutions must afford their students the ability to obtain federal funding for postsecondary education, the appellate court's judgment regarding count I could not be affirmed because plaintiff's second amended complaint fails to sufficiently plead that his discharge violated his asserted public policy.

¶ 28　　The HEA establishes various loan and grant programs to financially assist students in obtaining the benefits of a postsecondary education. 20 U.S.C. § 1070 (2012). The funds provided by HEA programs are given to eligible students, who attend eligible institutions, based on various factors. See *id.* §§ 1087kk, 1091, 1094. In order to be an eligible institution, a postsecondary institution must sign a program participation agreement, which provides the conditions and requirements an institution must meet to initially and continuously participate as an eligible institution under Title IV of the HEA. *Id.* § 1094; 34 C.F.R. § 668.14 (2014). The Secretary of the United States Department of Education (Secretary) may terminate, limit, or suspend eligibility if an institution fails to satisfy the statutory or regulatory requirements. 20 U.S.C. § 1094(c)(1)(F) (2012); 34 C.F.R. § 600.41 (2010); 34 C.F.R. § 668.86 (2000).

¶ 29　　Plaintiff first contends defendant put the HEA funding of Malcolm X students at risk by violating section 1094(a)(21) of the HEA (20 U.S.C. § 1094(a)(21) (2012)). Section

---

[2]The appellate court's opinion continually refers to plaintiff's alleged clearly mandated public policy as "the *right* to obtain the benefits of postsecondary education through financial help of federal and state programs." (Emphasis added.) We note, however, that the allegations in plaintiff's complaint and the arguments he makes actually assert that institutions of higher learning must provide students the *ability* to obtain the funding through federal programs for postsecondary education. In analyzing plaintiff's retaliatory discharge claim, we adhere to his characterization.

1094(a)(21) provides that an eligible institution, such as defendant, for the purposes of Title IV of the HEA, must meet the requirements established by the Secretary and accrediting agencies. *Id.* Section 668.14(b)(23) of the Code of Federal Regulations also restates this requirement. 34 C.F.R. § 668.14(b)(23) (2014). The Secretary determines which accrediting agencies are nationally recognized for the purposes of Title IV of the HEA in accordance with section 1099b of HEA and its own regulations. 20 U.S.C. § 1099b (2012); 34 C.F.R. § 602 *et seq.*

¶ 30 According to plaintiff, the instructors defendant appointed to HeaPro 101 were not qualified under the standards provided by the National Accrediting Agency for Clinical Laboratory Sciences (NAACLS). Plaintiff's reliance on the NAACLS standards is misplaced. It is undisputed that, in 2015, the NAACLS was not recognized by the Secretary as an accrediting agency for the purposes of Title IV eligibility. Without being a recognized accrediting agency by the Secretary, the NAACLS has no bearing on an institution's eligibility under the HEA, and defendant is not required to abide by its standards or requirements. Therefore, defendant's violation of NAACLS standards does not implicate the provisions of 20 U.S.C. § 1094(a)(21) or 34 C.F.R. § 668.14(b)(23), nor could it serve as the basis for his allegation that defendant undermined his asserted public policy by putting the funding of Malcolm X students at risk.

¶ 31 Count I of plaintiff's second amended complaint also alleges violations of section 1094(c)(3)(A) of the HEA (20 U.S.C. § 1094(c)(3)(A) (2012)) based on substantial misrepresentations of the nature of defendant's educational program and the employability of its graduates. Under the HEA, the Secretary may impose civil penalties, limit or suspend an institution's participation, or initiate termination of eligibility proceedings if an institution is found to have engaged in substantial misrepresentation of the nature of its educational program, its financial charges, or the employability of its graduates. *Id.* § 1094(c)(3) (2012); 34 C.F.R. § 668.71(a)-(b) (2013). Misrepresentation is defined as any false, erroneous, or misleading communication made, directly or indirectly, in writing, visually, orally, or through other means, including any statement that has the likelihood or tendency to deceive. 34 C.F.R. § 668.71(c) (2012).

¶ 32 Plaintiff contends that defendant misrepresented the nature of its educational program. Matters concerning the nature of an eligible institution's educational program include, but are not limited to, statements regarding "[t]he number, availability, and qualifications, including the training and experience, of its faculty and other personnel." 34 C.F.R. § 668.72(i). The specific deficiency cited by plaintiff is the appointment of the instructors.

¶ 33 Plaintiff's complaint, however, lacks any contention that defendant made a misrepresentation. There is no allegation that defendant promised a certain level of quality of education or relayed any type of communication about the qualifications, training, or experience of the instructors to any student, the Secretary, lenders, or an accrediting agency. While plaintiff pleaded that the instructors were unqualified based on the lack of training, he did not allege that defendant made a communication about the instructor's actual qualifications, training, or experience that were untrue or misleading. Therefore, plaintiff's second amended complaint fails to sufficiently allege that defendant substantially misrepresented the nature of its education program in violation of section 1094(c)(3) of the HEA.

¶ 34    Plaintiff also pleaded that defendant's appointment of the alleged unqualified instructors misrepresented the employability of its graduates because the students enrolled in HeaPro 101 did not meet the certification requirements for phlebotomists. Misrepresentations concerning the employability of graduates include, but are not limited to, statements regarding "requirements that are generally needed to be employed in the fields for which the training is provided." 34 C.F.R. 668.74(f).

¶ 35    Similar to plaintiff's allegation that defendant misrepresented the nature of its educational program, plaintiff fails to assert that defendant made an untrue or misleading communication regarding the requirements to become a phlebotomist or EKG technician. Plaintiff's second amended complaint also lacks sufficient facts to infer that students who pass HeaPro 101 taught by the allegedly unqualified instructors would have failed to meet some unspecified requirement of certification. There is no allegation, much less supporting authority, that students must be taught by certified phlebotomists/EKG technicians in order to become a certified phlebotomist or EKG technician. In fact, plaintiff's second amended complaint is devoid of any requirements that a person must meet to become certified. There is simply nothing in the second amended complaint, other than plaintiff's unsupported assertion, to conclude that the students enrolled in HeaPro 101 would not have met the certification requirements. See *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 26 (a plaintiff may not rely on conclusions of fact unsupported by specific factual allegations); *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 24 (1998) (plaintiff's conclusory allegations are not sufficient to state a cause of action). Therefore, plaintiff's retaliatory discharge claim must also fail regarding the alleged misrepresentation of the employability of the graduates.

¶ 36    Plaintiff also alleges that defendant violated its program participant agreement, required by 20 U.S.C. § 1094 and 34 C.F.R. § 668.14, by appointing unqualified instructors in violation of the requirements established by the accrediting agencies and by substantially misrepresenting the nature of its educational program and employability of its students. For the reasons stated above, plaintiff did not plead facts sufficient to establish the activity of appointing the instructors violated sections 1094(a)(21), (c)(3)(A) of the HEA or 34 C.F.R. § 668.14(b)(23). See *supra* ¶¶ 28-33. Thus, plaintiff also failed to sufficiently plead that defendant undermined the ability of students to obtain HEA funding by violating 20 U.S.C. § 1094 and 34 C.F.R. § 668.14.

¶ 37    Lastly, plaintiff contends that defendant defrauded the students enrolled in HeaPro 101. An allegation that defendant made a misrepresentation, a basic element of fraud, is absent from plaintiff's second amended complaint. See *In re Witt*, 145 Ill. 2d 380, 391 (1991). Therefore, plaintiff did not plead sufficient facts to support this contention.

¶ 38    In addition to being factually deficient, plaintiff's complaint also fails to explain how any allegation of fraud, if proven, would undermine plaintiff's asserted public policy. Although fraudulent conduct is actionable, it is a separate cause of action from a retaliatory discharge claim and is only relevant here to the extent that it undermines the asserted public policy that students must have the ability to obtain federal funding for postsecondary education. Plaintiff's second amended complaint and his brief before this court make no connection between the alleged fraud and the potential loss of Malcolm X students' HEA funding, through a citation to a provision of the HEA that would provide grounds to terminate an institution's eligibility if it engaged in fraud, or otherwise. Plaintiff's allegation that his discharge violated his asserted

public policy by defrauding students enrolled in HeaPro 101 therefore consists of his own legal conclusions. Accordingly, this allegation does not provide a basis for plaintiff's retaliatory discharge claim.

¶ 39       In sum, plaintiff failed to allege sufficient facts to conclude that the Secretary could terminate defendant's eligibility under the HEA, which would result in the loss of Malcolm X students' HEA funding. Without alleging sufficient facts to support that the appointment of the instructors placed the federal funding of Malcolm X students at risk, plaintiff failed to sufficiently plead that his discharge undermined a public policy that institutions must provide students the ability to obtain the benefits of postsecondary education through the financial help of federal and state-funded programs. Count I of plaintiff's second amended complaint, alleging retaliatory discharge, was therefore properly dismissed.

¶ 40       We turn then to count II of plaintiff's complaint, which asserted a violation of the Whistleblower Act (740 ILCS § 174/1 *et seq.* (West 2014)). The Whistleblower Act provides employees protection from an employer's retaliation for certain disclosures and refusals and prohibits policies that prevent an employee from disclosing information to a government agency that the employee reasonably believes violate a state or federal law, rule, or regulation. 740 ILCS 174/10, 15, 20, 20.1, 20.2 (West 2014). Plaintiff predicates his claim on section 20 of the Whistleblower Act, which provides "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." *Id.* § 20.

¶ 41       The appellate court determined plaintiff's complaint was insufficient because a "refusal to participate" must be preceded by an employer's request or demand that an employee engage in the illegal or unlawful conduct, something plaintiff did not allege. 2018 IL App (1st) 170067, ¶ 41. Before this court, plaintiff takes issue with that contention and argues that the appellate court was incorrect to hold that "refusal to participate" requires a plaintiff to plead that an employer specifically asked the plaintiff to perform an unlawful act. It was incorrect, in plaintiff's view, because it would impermissibly add another element to a claim under section 20 of the Whistleblower Act.

¶ 42       Section 20 of the Whistleblower Act requires that an employee refuse to participate "in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20 (West 2014). To state a claim under section 20 of the Whistleblower Act, a plaintiff must therefore sufficiently allege not only that he or she refused to participate in the activity but also that the activity violated a statute, rule, or regulation.

¶ 43       The theory underlying count II of plaintiff's amended complaint is that he was terminated for having refused to participate in the appointment of the unqualified instructors, something that would defraud students and violate 20 U.S.C. § 1094(a)(21), (c)(3)(A) and 34 C.F.R. § 668.14. These violations of law are the same that plaintiff alleged to support his retaliatory discharge claim.

¶ 44       As explained in our analysis of count I, plaintiff's second amended complaint lacks sufficient facts to conclude that defendant's appointment of the instructors violated the standards of a recognized accrediting agency or misrepresented the nature of its educational program or employability of its students. See *supra* ¶¶ 33-35. Plaintiff's complaint therefore failed to sufficiently plead that defendant's appointment of the instructors violated 20 U.S.C. § 1094(a)(21), (c)(3)(A), or 34 C.F.R. § 668.14. Similarly, plaintiff's fraud allegation cannot

serve as the predicate for his claim under the Whistleblower Act because he fails to cite any state or federal law, rule, or regulation that defendant violated resulting in fraud on the students enrolled in HeaPro 101.

¶ 45 Therefore, irrespective of whether plaintiff refused to participate, his Whistleblower Act action must nevertheless fail because plaintiff did not sufficiently plead that the appointment of the instructors violated a statute, rule, or regulation, as required by section 20 of the Whistleblower Act. 740 ILCS 174/20 (West 2014). Count II in plaintiff's second amended complaint was therefore properly dismissed.

¶ 46                                          CONCLUSION

¶ 47 For the foregoing reasons, we hold that plaintiff failed to sufficiently plead a retaliatory discharge claim or a violation of the Whistleblower Act. The circuit court therefore acted correctly when it dismissed counts I and II of plaintiff's second amended complaint, and the appellate court erred when it reversed the dismissal of the retaliatory discharge claim. The judgment of the appellate court is therefore reversed in part and affirmed in part, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 48 Appellate court judgment affirmed in part and reversed in part.

¶ 49 Circuit court judgment affirmed.

¶ 50 Cause remanded.

¶ 51 JUSTICE NEVILLE took no part in the consideration or decision of this case.