2024 IL App (1st) 230758-U

No. 1-23-0758

Order filed June 14, 2024

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| AEKTA PATEL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 L 9842 |
| | ) | |
| COOK COUNTY HEALTH AND HOSPITAL | ) | Honorable |
| SYSTEMS (CCHHS), | ) | Mary Colleen Roberts, |
| | ) | Judge, presiding. |
| Defendant-Appellee. | ) | |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Lyle and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's order granting defendant's motion for summary judgment is affirmed in part and reversed in part where there is a genuine issue of material fact regarding plaintiff's claim under section 15 of the Whistleblower Act, but plaintiff's claim under section 20 of the Act fails as a matter of law.

¶ 2    Plaintiff Aekta Patel appeals the circuit court's order granting defendant Cook County Health and Hospital Systems' motion for summary judgment. The issue on appeal is whether the circuit court erred in granting summary judgment. For the following reasons, we affirm in part and reverse in part the circuit court's order granting summary judgment and remand this case for further proceedings.

¶ 3                                              I. BACKGROUND

¶ 4       In 2009, plaintiff Aekta Patel was hired as an inpatient staff pharmacist by defendant Cook County Health and Hospital Systems. Plaintiff was assigned to Cermak Health Services of Cook County, the correctional health entity of CCHHS which provides onsite health care to detainees at the Cook County Department of Corrections. One of the services Cermak provides to detainees is an opioid treatment program. As part of the opioid treatment program, controlled narcotic substances, suboxone and methadone, are used to help detainees reduce dependency on opioids. Cermak pharmacists, including plaintiff, are responsible for dispensing these substances to detainees. While defendant's job descriptions for some of its nurse positions include the administration of drugs to detainees, plaintiff's job description did not require administering suboxone and methadone to detainees, nor did defendant provide training to plaintiff regarding the administration of suboxone and methadone.

¶ 5       Beginning in July 2018, plaintiff raised concerns to her supervisor, Dr. Mary Ann Wrobel, that Cermak pharmacists were being required to orally administer suboxone and methadone to detainees despite drug administration not being within the scope of the Pharmacy Practice Act (225 ILCS 85/1 *et seq.* (West 2018)). Later that same month, plaintiff was disciplined for allegedly being unprofessional on the phone with a county employee, which plaintiff alleges was a routine instruction she gave to a medical technician about refill protocol. In August 2018, plaintiff emailed CCHHS management and her pharmacist co-workers about a conversation she had with the Illinois Department of Financial and Professional Regulations. Plaintiff claimed that the IDFPR pharmacist license does not allow oral administration of controlled substances and that pharmacists are only allowed to dispense, and not to administer, controlled substances. Throughout the next

several months, plaintiff sent at least seven emails to CCHHS management regarding the administration of suboxone and methadone at Cermak. In January of 2019, plaintiff received verbal and written discipline for allegedly failing to follow orders from CCHHS management to stop sending emails to management regarding her concerns about the administration of suboxone and methadone by pharmacists.

¶ 6    During this same period of time, in addition to plaintiff's internal complaints to CCHHS management, plaintiff sent complaints to various outside agencies about Cermak pharmacists being required to administer suboxone and methadone, including the IDFPR and the Illinois Department of Human Services Division of Substance Use Prevention and Recovery (IDHS-DSUPR). On October 17, 2018, the IDFPR investigated defendant's work site and observed a pharmacist "dispense and administer" suboxone and methadone to two detainees. (C 310.) After the IDFPR visit, Dr. Wrobel informed plaintiff that the IDFPR had found nothing wrong. When plaintiff asked for a report stating that the inspector had found nothing wrong, Dr. Wrobel stated that plaintiff didn't need it and walked away. On the same day as the IDFPR visit, plaintiff was suspended for 13 days for allegedly violating HIPAA and "being insubordinate for failing to follow a management directive." (C 55.) The IDFPR performed a second visit in July 2019 and closed its investigation in 2021. Additionally, the IDHS-DSUPR inspected defendant's work site in January 2019, finding no violations under its jurisdiction.

¶ 7    In March of 2019, defendant terminated plaintiff's employment, alleging that she had violated HIPAA by scanning 83 documents containing patient protected health information onto her Cook County email address. Plaintiff admitted that she had scanned the emails but argued that she only scanned the patient records to her work email because she had been instructed by Dr.

Wrobel to send plaintiff's unfinished work to her supervisors, and that plaintiff had done this in the past without it being considered a HIPAA violation. A hearing regarding these charges was held, in which plaintiff contested the termination charges against her and made several requests, including that defendant permanently remove suboxone and methadone administration from her assigned tasks. In the hearing officer's July 7, 2019, decision, he found that plaintiff had violated HIPAA and five Cook County rules and regulations. However, the hearing officer found that termination was too severe of a penalty and reduced plaintiff's termination to a 29-day suspension.

¶ 8 On July 9, 2019, defendant sent plaintiff a letter requiring her to attend a mandatory Employee Health Services return-to-work appointment on July 15. However, the letter was postmarked on July 17 and plaintiff claimed that she did not receive the letter until that date, two days after the scheduled return-to-work appointment. On July 31, defendant sent plaintiff a second letter, noting that she had failed to attend the mandatory return-to-work appointment and that she had fourteen business days from the receipt of the letter to contact the human resources department regarding her return to work. Plaintiff received the letter on August 12.

¶ 9 On August 2, plaintiff's attorney wrote a letter to defendant that reiterated plaintiff's previous request that administration of suboxone and methadone be permanently removed from plaintiff's assigned tasks at Cermak. Plaintiff did not otherwise contact defendant or the human resources department, nor did defendant provide any response to plaintiff's attorney's letter. On September 12, 2019, defendant terminated plaintiff's employment for several stated reasons, including job abandonment, gross insubordination, engaging in conduct that reflects adversely or brings discredit to the CCHHS, and failure to follow instructions or failure to work in accordance with CCHHS's policies, procedures, and practices.

¶ 10    On September 14, 2020, plaintiff filed a complaint under sections 15 and 20 of the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2018)), alleging that she suffered adverse employment actions in retaliation for engaging in activity that is protected under the Act. Defendant filed a motion for summary judgment, which the circuit court granted. Citing *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325 (2002), the circuit court held that plaintiff's claims under the Whistleblower Act were subject to a one-year statute of limitations, and that therefore any claims arising prior to plaintiff's September 12, 2019, termination were untimely. The circuit court held that plaintiff's claim regarding her September 12, 2019, termination was timely[1], but that "[p]laintiff's termination was not based on protected activity under the Illinois Whistleblower Act." This timely appeal followed. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 11                                    II. ANALYSIS

¶ 12    Plaintiff argues that the circuit court erred in granting defendant's motion for summary judgment because she engaged in activity that is protected under the Whistleblower Act and that defendant terminated her employment in retaliation for her protected activity. Defendant argues that summary judgment was properly granted because plaintiff did not engage in any protected activity under the Whistleblower Act, and even if she did, it had a valid, non-pretextual reason for terminating plaintiff's employment that was unrelated to plaintiff's protected activity.

¶ 13    "A motion for summary judgment is properly granted only where the pleadings, depositions, admissions, and affidavits establish that no genuine issue of material fact exists and

---

[1] September 12, 2020 was a Saturday, so plaintiff's claim is timely as she filed it on September 14, the following Monday. See 5 ILCS 70/1.11 (West 2018).

that the moving party is entitled to judgment as a matter of law." *Thai v. Triumvera 600 Naples Court Condominium Ass'n*, 2020 IL App (1st) 192408, ¶ 38; 735 ILCS 5/2-1005 (West 2022). "A genuine issue of material fact exists where either the material facts are disputed or the material facts are undisputed but reasonable people may draw different inferences from those facts." *Sardiga v. Northern Trust Co.*, 409 Ill. App. 3d 56, 61 (2011). "In determining whether factual issues exist for the purposes of a summary judgment motion, the court must ignore personal conclusions, opinions and self-serving statements and consider only facts admissible in evidence." *Reuben H. Donnelley Corp. v. Krasny Supply Co., Inc.*, 227 Ill. App. 3d 414, 421 (1991). Facts are viewed in the light most favorable to the non-moving party. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 282 (2000). An employer's true motive for terminating an employee is a question of fact that is not normally subject to summary judgment. *Zuccolo v. Hannah Marine Corp.*, 387 Ill. App. 3d 561, 568 (2008). A circuit court's grant of summary judgment is reviewed *de novo*. *Id.* at 564.

¶ 14                                      A. Section 15 of the Whistleblower Act

¶ 15    Plaintiff argues that she engaged in protected activity under sections 15 and 20 of the Whistleblower Act. "The Whistleblower Act provides employees protection from an employer's retaliation for certain disclosures and refusals and prohibits policies that prevent an employee from disclosing information to a government agency that the employee reasonably believes violate a state or federal law, rule, or regulation." *Roberts v. Board of Trustees of Community College District No. 508*, 2019 IL 123594, ¶ 40. Section 15 of the Whistleblower Act prohibits an employer from retaliating "against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information

discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b) (West 2018). Therefore, for plaintiff to prevail under section 15 of the Whistleblower Act, she must show that: (1) she disclosed information to a government or law enforcement agency, (2) she reasonably believed that the information disclosed a "violation of a State or federal law, rule, or regulation," and (3) due to this disclosure, her employer retaliated against her. *Id.*

¶ 16 The parties do not dispute that plaintiff repeatedly informed both CCHHS management and outside government agencies, such as the IDFPR and the IDHS-DSUPR, that defendant's alleged requirement that pharmacists administer suboxone and methadone to detainees violates the Pharmacy Practice Act (225 ILCS 85/1 *et seq.* (West 2018)). However, plaintiff must have reasonably believed that the information that she sent disclosed a violation of the Pharmacy Practice Act. "Generally, reasonableness is a question of fact rather than a question of law, unless reasonable minds could not differ." *Brame v. City of North Chicago*, 2011 IL App (2d) 100760, ¶ 13.

¶ 17 Plaintiff testified in her depositions that she believed the administration of suboxone and methadone by a pharmacist violated the Pharmacy Practice Act. The deposition transcripts were attached to defendant's motion for summary judgment and were squarely before the circuit court. Defendant argues that plaintiff's belief cannot be considered reasonable because she had been informed after the inspections by the IDFPR and IDHS-DSUPR that neither organization had found any violations. But that is a fact issue.

¶ 18 Finally, for plaintiff to succeed in her claim under section 15 of the Whistleblower Act, plaintiff must show that she suffered "an adverse employment action by [her] employer" in retaliation for plaintiff's disclosure to a government or law enforcement agency "of a suspected

violation of an Illinois or federal law, rule or regulation." *Sweeney v. City of Decatur*, 2017 IL App (4th) 160492, ¶ 15. "The employer's motive in discharging the employee is the ultimate issue when deciding the element of causation." *Brummel v. Grossman*, 2018 IL App (1st) 170516, ¶ 49.

¶ 19    Plaintiff argues that the reasons provided by defendant for her September 12, 2019, termination were pretextual, and that she was instead terminated in retaliation for her complaints to government agencies regarding suboxone and methadone administration. In support, plaintiff points to her depositions, in which she testified that after she began complaining about the illegality of the administration of suboxone and methadone, defendant punished plaintiff by disciplining her for routine conduct that plaintiff had not been punished for previously. (C 160.) For example, during the same month after plaintiff first raised concerns to Dr. Wrobel about suboxone and methadone administration, plaintiff was disciplined for a "routine instruction to a medical technician about refill protocol" that she alleges was no different from the procedures that plaintiff had been following for years. (C 160.) Similarly, on the same day that the IDFPR inspector investigated defendant's facility and practices in response to plaintiff's complaint, defendant issued plaintiff a 13-day suspension, in part due to plaintiff's "gross insubordination." (C140). Further, plaintiff was terminated in March 2019 because of an alleged HIPAA violation. Plaintiff testified in her depositions that she was following Dr. Wrobel's instructions and claims that she scanned patient information to plaintiff's work email so she could forward her unfinished work to her supervisors, which plaintiff had done in the past without issue. (C 142.) Plaintiff argues that these previous adverse employment actions show that plaintiff was terminated in September 2019

due to her previous complaints regarding the administration of suboxone and methadone by pharmacists, rather than due to job abandonment as defendant claims.[2]

¶ 20   Defendant argues that it had a valid, non-pretextual reason for terminating plaintiff's employment on September 12, 2019: job abandonment. After the hearing officer reduced plaintiff's March 2019 disciplinary action from termination to a 29-day suspension, defendant sent plaintiff a letter requiring her to report to Employee Health Services by July 15, 2019. Plaintiff did not appear for this appointment because she claimed that she only received the letter on July 17. Defendant then sent plaintiff a final notice directing her to contact the human resources department within 14 business days of her receipt of the letter, which plaintiff failed to do. Defendant argues that this was a legitimate reason for defendant to terminate plaintiff's employment. Defendant contends that even though plaintiff had sent a letter to defendant through her attorney on August 2, 2019 seeking to negotiate plaintiff's return to work, this did not change the fact that plaintiff failed to contact HR within the 14-day deadline and that defendant had a valid reason to terminate plaintiff's employment that was unrelated to any alleged protected activity under the

---

[2]   Defendant argues that all of the adverse employment actions alleged by plaintiff in her complaint, except for her September 12, 2019 termination, are "subject to the one-year limitations period set forth in the Local Governmental and Governmental Employees Tort Immunity Act" and are therefore time-barred. *Taylor v. Board of Education of City of Chicago*, 2014 IL App (1st) 123744, ¶ 46; 745 ILCS 10/8-101(a) (West 2022). Plaintiff does not dispute this point. Defendant argues that we should disregard any of plaintiff's arguments that reference these time-barred adverse employment actions. However, plaintiff references these time-barred adverse employment actions in her arguments on appeal because she contends that they show defendant's hostility to plaintiff's complaints regarding the administration of suboxone and methadone, and that they are relevant to defendant's retaliatory intent in terminating plaintiff's employment on September 12, 2019. Plaintiff is permitted to reference time-barred prior acts as background evidence in order to support her timely claim regarding her September 12, 2019, termination. See *Pace Suburban Bus Division of Regional Transportation Authority v. Illinois Labor Relations Board*, 406 Ill. App. 3d 484, 502 (2010).

Whistleblower Act. In support, defendant points to the testimony of Dr. Wrobel in a signed declaration defendant attached to its motion for summary judgment. (C 246.)

¶ 21    As we recently stated in a similar case involving claims under the Whistleblower Act:

> "We are presented with a classic case of both sides presenting evidence to support their positions and advancing a narrative that could be true. In such a case, summary judgment is not appropriate. Our role in reviewing a summary judgment decision is not to evaluate the quality of the evidence or argument, but rather to evaluate whether any evidence exists from which a fact finder can conclude that the party proved the elements of the cause of action." *Hubert v. Board of Education of City of Chicago*, 2020 IL App (1st) 190790, ¶ 24.

Defendant's motive in terminating plaintiff's employment is a genuine issue of material fact. *Id.* ¶¶ 25, 35. A reasonable jury could find that defendant terminated plaintiff's employment in retaliation for her repeated complaints about alleged Pharmacy Practice Act violations to government agencies, and that defendant's stated reason for plaintiff's termination, job abandonment, was pretextual. Both parties have provided evidence supporting their arguments about what defendant's motive was, and it is for the fact finder to determine which party is the most convincing. *Id.* ¶ 36. Because there are genuine issues of material fact, the circuit court erred in granting defendant's motion for summary judgment regarding plaintiff's claim under section 15 of the Whistleblower Act. *Zuccolo*, 387 Ill. App. 3d at 569 ("[W]e believe that a disputed question of fact as to [employer's] motivation in terminating the plaintiff still remains, thereby precluding summary judgment.").

¶ 22    Defendant argues that plaintiff cannot satisfy the element of causation because defendant had a valid, non-pretextual reason for terminating plaintiff's employment. *Brummel*, 2018 IL App (1st) 170516, ¶ 49. However, "[i]f an employer provides a reason for the employee's dismissal, that does not automatically defeat a retaliatory discharge claim." *Michael v. Precision Alliance Group, LLC*, 2014 IL 117376, ¶ 32. Instead, the employer must provide a valid, non-pretextual reason for the employee's termination and *the trier of fact must believe this reason. Id.* ¶ 39. We leave it to the jury to decide whether defendant's provided reason for terminating plaintiff's employment is pretextual or not.

¶ 23                                    B. Section 20 of the Whistleblower Act

¶ 24    Section 20 of the Whistleblower Act prohibits an employer from retaliating "against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation[.]" 740 ILCS 174/20 (West 2018). Therefore, for plaintiff to have engaged in protected activity under section 20 of the Whistleblower Act, she must show that (1) an activity violated a statute, rule or regulation, and (2) plaintiff refused to participate in that activity. *Roberts*, 2019 IL 123594, ¶ 42.

¶ 25    Plaintiff alleges that the administration of controlled narcotic substances, like suboxone and methadone, by a pharmacist to detainees in the opioid treatment program violates the Pharmacy Practice Act. Plaintiff argues that the Pharmacy Practice Act defines what constitutes the practice of pharmacy, and only authorizes the administration of drugs in a few limited circumstances, none of which are met here. 225 ILCS 85/3(d)(4) (West 2018). Plaintiff contends that under the Pharmacy Practice Act, she is authorized to dispense suboxone and methadone to detainees but is not authorized to administer it.

¶ 26    Under the Pharmacy Practice Act, the "[p]ractice of pharmacy" includes "the dispensing of prescription drug orders." *Id*. § 3(d)(2). The Act defines "dispensing" as the "interpretation, evaluation, and implementation of a prescription drug order, including the preparation and delivery of a drug *** to a patient *** in a suitable container appropriately labeled for subsequent administration to or use by a patient in accordance with applicable State and federal laws and regulations." *Id*. § 3(m). The Act also states that the "[p]ractice of pharmacy" includes "drug administration," but only in specific defined circumstances. *Id*. § 3(d)(4). None of the defined circumstances in the Act authorize the oral administration of controlled substances by a pharmacist. *Id*. Although there is an exception that pharmacists can administer *injections* of specific types of medication to patients after they receive certain training, plaintiff has alleged that she was required to administer suboxone and methadone orally. 225 ILCS 85/3(d)(4)(B-5) (West 2020).[3] The Pharmacy Practice Act does not define "administration." See 225 ILCS 85/3 (West 2018).

¶ 27    Under the plain language of the Pharmacy Practice Act, oral administration of suboxone and methadone does not fall within the practice of pharmacy. However, plaintiff does not cite to any section of the Pharmacy Practice Act that states that the Act is violated if a pharmacist performs an action outside of the scope of the practice of pharmacy. Neither does plaintiff cite a section of the Act that states that it is a violation of the Act for an individual to administer controlled substances. Nor could she, because no provision of the Pharmacy Practice Act makes the administration of suboxone and methadone by pharmacists unlawful. Instead, the purpose of

_____

[3] This specific exception was added to the Pharmacy Practice Act on January 1, 2020, and did not exist while plaintiff was employed by defendant. See 225 ILCS 85/3(d)(4)(B-5) (West 2020).

the Act is to ensure that "only qualified persons be permitted to practice pharmacy in the State of Illinois." *Id.* § 1. That is, the Act's purpose is to prevent non-pharmacists from practicing pharmacy, not to define the limits of what actions a pharmacist may take. If plaintiff's reading of the Act is correct, then it would be unlawful under the Act for a pharmacist to do anything other than the 17 actions described under the practice of pharmacy. Pharmacists would be legally prohibited from performing numerous tasks ancillary to the practice of pharmacy. Such a reading would be absurd. Because the administration of suboxone and methadone by pharmacists to detainees in the opioid treatment program does not violate the Pharmacy Practice Act, the circuit court did not err in granting defendant's motion for summary judgment regarding plaintiff's claims under section 20 of the Whistleblower Act.

¶ 28                                   C. Forfeiture

¶ 29    As a final matter, defendant argues that plaintiff has forfeited some of her arguments and citations to the record that she introduces for the first time on appeal. Defendant argues that plaintiff raises three new arguments for the first time on appeal, and that because plaintiff did not rely on these arguments in her response to defendant's motion for summary judgment before the circuit court, the arguments are forfeited, and we should not consider them. *Village of Palatine v. Palatine Associates, LLC*, 2012 IL App (1st) 102707, ¶ 64. These three new arguments are: (1) that plaintiff refused to circumvent the requirements of the Pharmacy Practice Act "by posing as a Clinical Pharmacist"; (2) that plaintiff's termination and other disciplinary actions were proximate in time to her alleged protected activity; and (3) that defendant terminated plaintiff's employment "in part because she persisted in including upper management in complaints and in part because she refused to return to work absent assurance that she would not be required to administer

controlled substances" and as "punish[ment] for the prior discipline." However, plaintiff specifically raises these arguments in her memorandum in opposition to defendant's motion for summary judgment.

¶ 30    Defendant additionally makes forfeiture arguments regarding 11 factual citations to the record that defendant claims plaintiff did not present before the circuit court when opposing defendant's summary judgment motion. However, plaintiff testifies as to some of these facts in her depositions (which were attached to defendant's motion for summary judgment and thus were squarely before the circuit court), and we have not relied on any of the remaining factual points in reaching our conclusion in this case.

¶ 31                            III. CONCLUSION

¶ 32    The judgment of the circuit court of Cook County is affirmed regarding plaintiff's claim under section 20 of the Whistleblower Act and reversed regarding plaintiff's claim under section 15 of the Whistleblower Act, and the cause is remanded.

¶ 33    Affirmed in part and reversed in part; cause remanded.