2025 IL App (1st) 232263-U

THIRD DIVISION
June 25, 2025

No. 1-23-2263

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| LAURI MAZURKIEWICZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 20 L 3511 |
| | ) | |
| NORTHWESTERN MEMORIAL HOSPITAL, | ) | Honorable |
| | ) | John J. Curry, Jr., |
| Defendant-Appellee. | ) | Judge Presiding. |
| | ) | |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirming the grant of summary judgment in favor of a hospital on a travel nurse's retaliatory discharge claim; affirming the denial of sanctions against the hospital; and finding a lack of appellate court jurisdiction to consider the dismissal of the nurse's claims for tortious interference with contract and tortious interference with prospective economic advantage.

¶ 2    At the onset of the COVID-19 pandemic, plaintiff Lauri Mazurkiewicz was working as a travel nurse on a short-term assignment at defendant Northwestern Memorial Hospital (Northwestern) in Chicago.  On March 18, 2020, plaintiff sent an email to more than 100 nursing staff members and supervisors at Northwestern, expressing her disagreement with the guidelines

provided by the Centers for Disease Control and Prevention (CDC) regarding the use of certain personal protective equipment (PPE) by healthcare workers. Plaintiff stated that she intended to wear N95 respirators which she had personally obtained, and she urged the recipients of her email to "[d]emand proper PPE's!!!!!"

¶ 3    After Northwestern ended her temporary assignment on the following day, plaintiff filed a complaint against Northwestern in the circuit court of Cook County. The circuit court ultimately dismissed plaintiff's claims for tortious interference with contract and tortious interference with prospective economic advantage and granted summary judgment in favor of Northwestern on her retaliatory discharge claim. As discussed below, we affirm the grant of summary judgment in favor of Northwestern on plaintiff's claim for retaliatory discharge, and we find that we lack jurisdiction to consider the dismissal of the tortious interference claims.

¶ 4                              BACKGROUND

¶ 5                     *Plaintiff's Assignment at Northwestern*

¶ 6    Plaintiff was a travel nurse employed by TotalMed Healthcare Staffing (TotalMed), a staffing agency. A travel nurse typically works short-term contracts to fill staffing gaps at healthcare facilities at various locations.

¶ 7    Northwestern works with an agency called Vizient, which sources nurses from various staffing agencies to be assigned to Northwestern on a temporary basis. Through Vizient, plaintiff commenced a three-month temporary assignment at Northwestern in August 2019, which was extended twice.

¶ 8    On January 21, 2020, plaintiff (as "Traveler") signed a Travel Assignment Agreement with TotalMed. The agreement included compensation details and indicated that plaintiff would be placed at Northwestern from February 23, 2020, to May 20, 2020. The agreement further

stated it was "not a guarantee of employment" and that plaintiff understood that her employment with TotalMed was "at will."

¶ 9                                   *The COVID-19 Pandemic*

¶ 10    The COVID-19 pandemic began in Illinois in early 2020.  On March 9, 2020, Illinois Governor J.B. Pritzker issued a disaster proclamation which recognized COVID-19 as a "novel severe acute respiratory illness that can spread among people through respiratory transmissions." In subsequent executive orders, the Governor implemented measures intended to limit COVID-19 transmission by restricting social contact.

¶ 11                                  *The Emails and Text Messages*

¶ 12    On March 18, 2020, at 4 p.m., plaintiff sent an email to one of her managers, Bridget Wicherek (Wicherek), stating, in pertinent part: "Just wanted to let you know if I will be caring for a rule out Coronavirus patient, I will be wearing my own fitted N95 mask under a simple mask for safety and for my own protection.  I will start doing this tomorrow.  Better to be safe than sorry."  The term "rule out" apparently means that the medical facility is attempting to eliminate a particular diagnosis from the list of possible or probable conditions which a patient may have.

¶ 13    Wicherek responded at 6:02 p.m.: "Hi Lauri, Let's talk about this tomorrow. – Bridget."

¶ 14    Plaintiff then sent the following email message to more than 100 nursing staff members and supervisors at Northwestern at 7:19 p.m.:

> "So........WHO says it's airborne
> CDC says.....treat like droplet until there are enough particulate respirators.
> Seriously???????????????
>
> I'm wearing an N95 period if I am caring for a rule out COVID-19.  I have my own box of N95 masks.  I will wear the N95 mask under a simple mask and change out the simple mask like the facility wants me to do.

I want to be extra cautious and extra safe while taking care of a possible Coronavirus Patient. Hopefully management understands this.

Take care of yourselves! Be safe and stay healthy! Demand proper PPE's!!!!!

Sincerely,

Lauri Mazurkiewicz
Travel RN"

"WHO" is an acronym for the World Health Organization. Our understanding of plaintiff's email message is that she was representing that the WHO indicated that COVID-19 was transmitted through airborne particles, whereas the CDC advised medical professionals to treat COVID-19 as though it is transmitted through droplets until there were sufficient N95 respirators. As plaintiff apparently disagreed with the CDC's guidance as to PPE, she stated her intent to wear her own N95 respirator—which reduces the wearer's exposure to smaller airborne particles—underneath a surgical (or "simple") mask, which protects against larger droplets.

¶ 15    After reading the email, Wicherek texted her co-manager, Sharon Ward (Ward) at approximately 8 p.m.: "OMG. Lauri sent an e-mail to EVERYONE." Ward responded that plaintiff "had no right to do that," and she forwarded the email to her (and Wicherek's) director, Patricia O'Sullivan (O'Sullivan). Ward referred to plaintiff as a "psycho" in her text exchange with Wicherek.

¶ 16    Following communications among O'Sullivan, another director (Barbara Gobel), Wicherek, and Ward, the decision was made to terminate plaintiff's temporary placement with Northwestern. On March 19, 2020, plaintiff called in sick and did not attend work. On the same date, Northwestern informed Vizient to communicate to plaintiff's employer, TotalMed, that Northwestern was ending plaintiff's assignment.

¶ 17                    *The Initial Litigation*

¶ 18    On March 23, 2020, plaintiff filed a complaint in the circuit court of Cook County against

Northwestern, Wicherek, Jay Anderson,[1] and "unknown employees."  She asserted claims for

retaliatory discharge, violation of the Whistleblower Act (740 ILCS 174/20.1 (West 2020)), and

*respondeat superior*.  The defendants filed a motion to dismiss the complaint pursuant to

sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West

2020)).  Plaintiff voluntarily dismissed the Whistleblower Act and the *respondeat superior*

counts, as well as the retaliatory discharge count against the individual defendants.  The circuit

court denied the motion to dismiss the retaliatory discharge count against corporate defendant

Northwestern, and Northwestern filed an answer and affirmative defenses.

¶ 19    After extensive litigation, plaintiff eventually filed her fourth amended complaint (the

operative complaint), solely against Northwestern (and not any individual defendants).

¶ 20                    *The Operative Complaint*

¶ 21    The operative complaint against Northwestern asserted a claim for retaliatory discharge

(count I) and alternative counts for tortious interference with contract (count II) and tortious

interference with prospective economic advantage (count III).  In the tortious interference counts,

plaintiff alleged, in part, that Northwestern intentionally interfered with her contract and

relationship with TotalMed.  Although the circuit court had previously dismissed her *respondeat*

*superior* claim, plaintiff included this count (count IV) in the operative complaint to preserve the

issue for appeal.

¶ 22    Northwestern filed a motion pursuant to section 2-615 of the Code (735 ILCS 5/2-615

---

[1] Jay Anderson subsequently averred that he was the president of two hospitals affiliated with Northwestern—in Sandwich, Illinois, and in DeKalb, Illinois—but he was not involved with plaintiff's work at Northwestern in Chicago.

(West 2022)) to dismiss the tortious interference counts (counts II and III). In an order entered on October 18, 2022, the circuit court granted the motion.

¶ 23    In its answer to the operative complaint, Northwestern denied that plaintiff was assigned to treat patients with COVID-19 or that she worked on a COVID-19 unit. Northwestern further denied any implication that it failed to provide N95 respirators to staff under the circumstances where such PPE was appropriate and necessary. Northwestern maintained that it provided staff with the PPE which was tailored to the care and treatment being performed.

¶ 24    In its affirmative defenses, Northwestern asserted, in part, that plaintiff could not identify a clearly mandated public policy in existence on March 18, 2020, that required all nurses to wear N95 respirators regardless of whether their professional duties involved caring for a patient with COVID-19 or a possible case of COVID-19. Northwestern further asserted that plaintiff's email did not constitute protected activity, as it involved her personal concerns and personal views. The circuit court denied plaintiff's motion to dismiss these affirmative defenses.

¶ 25                        *Motion for Summary Judgment*

¶ 26    Northwestern filed a motion for summary judgment as to the sole remaining count of the operative complaint—the retaliatory discharge count.

¶ 27    Northwestern initially argued that plaintiff was not its employee, and only employees may pursue common law retaliatory discharge claims. According to Northwestern, plaintiff was employed by TotalMed, which paid her wages and housing stipend, withheld taxes from her paychecks, and issued her tax forms. Northwestern did not conduct performance reviews of travel nurses, and its corrective action process did not apply to travel nurses.

¶ 28    Northwestern further contended that plaintiff could not establish a clearly mandated public policy which Northwestern violated, particularly given the rapidly changing information

and governmental response as to COVID-19 at the time.

¶ 29    Northwestern maintained that in March 2020, plaintiff was assigned to the medical observation unit on the sixth floor of the Olson building ("Olson 6") on the Northwestern hospital campus. According to Northwestern, patients who tested positive for COVID-19 or had symptoms of COVID-19 and were awaiting the results of a test ("rule out" patients) were not placed in the Olson 6 observation unit. Plaintiff thus worked in a different building than where patients with COVID-19 or suspected of having COVID-19 were treated. In mid-March 2020, Northwestern's practice was to *not* assign any travel nurses to care for confirmed or "rule out" COVID-19 patients. Northwestern represented that, at that time, travel nurses were used to backfill non-COVID-19 positions to free up the Northwestern-employed nurses to care for COVID-19 patients.

¶ 30    Northwestern further represented that it consistently followed CDC guidelines regarding the types of PPE which should be used. As of March 18, 2020, the CDC guidelines provided that healthcare workers treating known or suspected COVID-19 patients, and those involved in aerosol-generating procedures, should wear N95 respirators. According to Northwestern, the CDC did not recommend at that time that all healthcare workers routinely wear N95 respirators in all settings. As there was no clear mandate of public policy (as of March 18, 2020) requiring Northwestern—or any hospital—to provide nurses with N95 respirators at all times and in all settings, Northwestern asserted that summary judgment in its favor on plaintiff's retaliatory discharge claim was proper.

¶ 31    Finally, Northwestern maintained that the undisputed facts established that plaintiff's alleged protected activity was not the cause of the cessation of her temporary assignment. Rather, Northwestern representatives testified during their depositions that plaintiff's assignment

ended due to her unprofessional conduct, *i.e.*, inappropriately messaging a large group instead of engaging in a one-on-one discussion with her manager regarding her concerns.

¶ 32                                   *Deposition Testimony*

¶ 33     The attachments to the summary judgment motion included deposition transcripts.

¶ 34     Plaintiff testified that Sharon Ward stated during a meeting on March 17, 2020, that the nurses in her unit would only be able to wear surgical masks in patient rooms.  According to plaintiff, the meeting included a discussion about the observation unit being converted to a "rule out" COVID-19 unit.

¶ 35     Plaintiff communicated her concerns regarding PPE to her TotalMed recruiter, Angelo LaBruno (LaBruno), on March 18, 2020.  In a text message exchange, plaintiff wrote, "I need to discuss what I want to do tomorrow when I work [because] it potentially could get my contract cancelled."  LaBruno responded, in part, "If I had a nickel for every time you said that these last 6-7 years."  Plaintiff also wrote, "Screw their rules it's MY health," referring to the rules of Northwestern management regarding PPE and other safety matters.

¶ 36     Plaintiff testified that she experienced anxiety and sadness from the termination of her assignment, particularly since the possibility of her employment by Northwestern had been discussed.  She acknowledged, however, that she had a prior history of anxiety and depression and that her experience with Northwestern had not precluded her from working, traveling, or socializing.  Plaintiff also testified that TotalMed and another staffing company continued to inform her of job opportunities in Illinois and elsewhere.

¶ 37     Wicherek testified that in March 2020 she was co-manager (with Sharon Ward) of three medical observation units, including Olson 6.  She described plaintiff's performance as "on par with the other staff."  Wicherek denied that there were any "rule out" COVID-19 patients in the

units which she managed.

¶ 38    Wicherek further testified that she considered plaintiff's March 18, 2020, group email to be unprofessional: "I felt that it was inappropriate for her to message over a hundred staff members questioning the guidelines that Northwestern was following after I had said let's talk about this tomorrow, and saying to demand proper PPE.  We had the appropriate PPE at that time."  Wicherek opined that the tone of the email would make the recipients question whether Northwestern was providing the proper PPE and following the appropriate guidelines.  Wicherek testified that if plaintiff had arrived for work on March 19, 2020, wearing her own N95 respirator, Wicherek would have had "questions" but would not have prevented plaintiff from wearing the N95 respirator.

¶ 39    Ward, who was Wicherek's co-manager, testified that she did not recall having a meeting in March 2020 where she stated that an observation unit would become a "rule out" COVID-19 unit.  According to Ward, none of the units she managed were "rule out" COVID-19 units in March 2020.  She also did not recall telling staff members that only surgical masks were to be worn in patient rooms or that they would not be able to wear masks in the hallways of the units.  Ward testified that N95 respirators were always available in her units, but they were not needed.  Similar to Wicherek, Ward viewed plaintiff's group email sent on March 18, 2020, as unprofessional, as it inaccurately suggested that proper PPE was not available at Northwestern at the beginning of a pandemic and that the staff needed to "demand" proper PPE.

¶ 40    Barbara Gobel (Gobel), the Northwestern director consulted by O'Sullivan regarding plaintiff's email, testified that she considered plaintiff's "blast" email to be "very inflammatory."  Gobel viewed the email as "challenging the staff to challenge" the CDC guidelines at the time, which did not recommend wearing an N95 respirator with non-COVID-19 patients.  Gobel also

opined that plaintiff bypassed the "chain of command" by not directly discussing her concerns with her manager. According to Gobel, no COVID-19 or suspected COVID-19 patients were admitted to the Northwestern building (Olson) where plaintiff worked. Gobel further testified that travel nurses would not have been fit-tested for N95 respirators at Northwestern—to ensure a properly sealed fit—since travel nurses were not caring for patients for which such PPE was recommended, *e.g.*, COVID-19 patients.

¶ 41                    *Response and Reply – Summary Judgment Motion*

¶ 42    In her response to Northwestern's motion for summary judgment, plaintiff represented that the observation unit where she worked had transitioned to a COVID-19 unit—where patients who were suspected of having COVID-19 were observed and tested – on March 18, 2020. Plaintiff asserted that Ward stated on March 16, 2020,[2] that plaintiff and other nurses would only be permitted to wear surgical masks while treating "rule out" COVID-19 patients in the observation unit, *i.e.*, N95 respirators were not allowed. According to plaintiff, the regulations of the Occupational Safety and Health Administration (OSHA) and the CDC required the use of N95 respirators while medical staff treated "rule out" COVID-19 patients. While plaintiff acknowledged that the CDC guidelines permitted the use of a surgical mask if there was a shortage of N95 respirators, she argued that Northwestern had consistently maintained that it had adequate supplies.

¶ 43    Plaintiff asserted that she "spoke out against the N95 prohibition" to protect herself and her colleagues. She maintained that she was an employee of Northwestern for purposes of her retaliatory discharge claim and that her discharge violated a clearly mandated public policy derived from the Governor's executive orders and the CDC and OSHA guidelines.

---

[2] Plaintiff's deposition testimony suggested that the meeting took place on March 17, 2020.

¶ 44     The attachments to plaintiff's response included an affidavit from Niccole Thornton (Thornton), another travel nurse who worked at Northwestern in March 2020. Thornton averred that she was present during the March 16, 2020, meeting where Sharon Ward advised that their unit would be transitioned to a "rule out" COVID-19 unit and that nurses would only be permitted to wear surgical masks when treating patients. Thornton further represented that she worked in the unit after such transition on March 18, 2020, and that she was only permitted to use a surgical mask, even when she performed aerosolizing procedures (*e.g.*, using a nebulizer) on "rule out" COVID-19 patients. She stated that plaintiff's group email "fully expressed how I felt, though I did not have the courage to speak out."

¶ 45     In its reply, Northwestern continued to argue that (a) plaintiff was an employee of TotalMed, not Northwestern, (b) plaintiff could not identify any clear mandate of public policy that Northwestern violated when it ended her temporary assignment, and (c) Northwestern ended her assignment for non-retaliatory reasons, *i.e.*, her "unprofessional" and "inappropriate" email.

¶ 46                    *Summary Judgment Ruling and Motion to Reconsider*

¶ 47     In an opinion and order entered on September 21, 2023, the circuit court granted summary judgment in favor of Northwestern on plaintiff's retaliatory discharge claim and dismissed the operative complaint with prejudice. Finding "there is no direct, consistent requirement that healthcare facilities provide all healthcare providers (*e.g.*, nurses) with N95 masks (respirators) while working in general admission or 'rule out' observation units," the circuit court noted that both the CDC and OSHA counseled that healthcare facilities should be aware of the then-existing PPE shortages and manage worker safety accordingly.

¶ 48     The circuit court further viewed plaintiff's email to essentially be "a digital screaming rant, replete with over-dramatic punctuation." The circuit court rejected her characterization of

her email as a "call to action," instead viewing it as an "incitement of panic, fear, and hysteria." As the circuit court found that the email pertained solely to plaintiff's concerns regarding her own safety and expressed her personal views on PPE policy, the email could not serve as a basis for her retaliatory discharge claim.

¶ 49    Plaintiff filed a motion to reconsider, arguing that the circuit court incorrectly concluded that the existence of an N95 respirator shortage was a basis for determining that plaintiff was unable to demonstrate a clearly mandated public policy.  Plaintiff also contended, in part, that the circuit court's characterizations of her were inappropriate in a summary judgment ruling. Plaintiff requested that the circuit court enter sanctions against Northwestern pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), based on its "false" statement in its reply to the summary judgment motion that there was an N95 respirator supply shortage and thus surgical masks could be used.

¶ 50    In its denial of the motion to reconsider on November 28, 2023, the circuit court noted that the supply of N95 respirators at Northwestern was not relevant to its analysis.  The circuit court observed that "[t]he CDC and OSHA gave hospitals wide latitude on PPE and merely counseled that they 'should' provide personnel with PPE when treating known or suspected COVID-19 patients and only after considered management decisions which governed a global approach to treatment in view of the pandemic."

¶ 51    As discussed further below, plaintiff filed a notice of appeal on December 1, 2023, and an amended notice of appeal on December 20, 2023.

¶ 52                                ANALYSIS

¶ 53    Plaintiff contends on appeal that the circuit court erred in granting summary judgment in favor of Northwestern on her retaliatory discharge claim, as her termination violated clearly

12

mandated public policy "flowing from" the Governor's executive orders, OSHA guidelines, and CDC guidelines. She further asserts that the circuit court abused its discretion by denying her request for Rule 137 sanctions against Northwestern. Plaintiff also seeks reversal of the dismissal of her claims for tortious interference with contract and tortious interference with prospective economic advantage. If successful on any of the foregoing contentions, plaintiff maintains that this matter should be assigned to a new trial judge on remand.

¶ 54                                    *Summary Judgment*

¶ 55    Pursuant to section 2-1005(c) of the Code, summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). When considering whether a genuine issue of material fact exists, a court construes the evidence in the light most favorable to the nonmoving party and strictly against the movant. *Johnson v. Armstrong*, 2022 IL 127942, ¶ 31. We review an order granting summary judgment *de novo* (*Robinson v. Village of Sauk Village*, 2022 IL 127236, ¶ 16), meaning that "we perform the same analysis a trial court would perform." *Watson v. Legacy Healthcare Financial Services, LLC*, 2021 IL App (1st) 210279, ¶ 29. In this appeal, plaintiff challenges the grant of summary judgment in favor of Northwestern on her retaliatory discharge claim.

¶ 56                                    *Retaliatory Discharge*

¶ 57    Under Illinois common law, an employer may discharge an "at will" employee with or without cause. *Roberts v. Board of Trustees of Community College District No. 508*, 2019 IL 123594, ¶ 22. Acknowledging the harshness of the "at will" employment rule, the Illinois Supreme Court initially recognized a cause of action for retaliatory discharge in 1978. *Kelsay v.*

*Motorola*, *Inc.*, 74 Ill. 2d 172, 181 (1978).  The intent was to strike a balance "among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out."  *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 129 (1981).  See also *Roberts*, 2019 IL 123594, ¶ 22 (observing that an "employer's ability to discharge an employee without cause in an oppressive manner could undermine a significant public policy").

¶ 58     To establish a claim for retaliatory discharge, an employee must plead that "(1) the employer discharged the employee, (2) the discharge was in retaliation for the employee's activities, and (3) the discharge violates a clearly mandated public policy."  *Roberts*, 2019 IL 123594, ¶ 23.  Accord *Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶ 27.  The decisions of our supreme court have maintained the narrow scope of a retaliatory discharge action.  *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 501 (2009).  See also *Roberts*, 2019 IL 123594, ¶ 22 (describing a retaliatory discharge claim as a "limited and narrow exception to the general rule that employees are at-will"); *Michael v. Precision Alliance Group, LLC*, 2014 IL 117376, ¶ 39 (same).

¶ 59     Although we note that the circuit court did not expressly rely on this basis, we find that summary judgment in favor of Northwestern was proper as plaintiff was not an employee of Northwestern.  *E.g.*, *Board of Managers of Roseglen Condominium Ass'n v. Harleysville Lake States Insurance Co.*, 2022 IL App (1st) 210265, ¶ 54 (observing that a reviewing court may affirm a circuit court's grant of summary judgment on any ground apparent from the record).  While plaintiff has described herself as an "independent contractor in a sense," this court has expressly held that an independent contractor may not assert a claim of retaliatory discharge.  *New Horizons Electronics Marketing, Inc. v. Clarion Corp. of America*, 203 Ill. App. 3d 332,

336-37 (1990). See also *Robinson v. United States*, 19 CV 395, 2020 WL 1323895, *2 (S.D. Ill. Mar. 20, 2020) (noting that "Illinois law does not recognize retaliatory discharge claims brought by non-employees"); *Lewis v. Marmon Group, LLC*, 11 C 1806, 2014 WL 4357603, *4 (N.D. Ill. Sept. 3, 2014) (stating that Illinois law does not recognize a claim for retaliatory discharge by an independent contractor); *Gu v. Provena St. Joseph Medical Center*, 11 C 5655, 2012 WL 699535, *2-3 (N.D. Ill. Feb. 29, 2012) (finding that a surgical assistant working at a hospital as an independent contractor could not bring a retaliatory discharge claim against the hospital under Illinois law); *Shah v. New England Life Insurance Co.*, 98 C 5355, 1998 WL 812542, *6 (N.D. Ill. Nov. 18, 1998) (concluding that "the tort of retaliatory discharge is not available to independent contractors under Illinois law"); *Driveaway & Truckaway Service, Inc. v. Aaron Driveaway & Truckaway Co.*, 781 F. Supp. 548, 553 (N.D. Ill. 1991) (holding that "the Illinois Supreme Court would not permit agents to pursue a claim for retaliatory discharge against their principals").

¶ 60 Plaintiff argues that TotalMed's lack of control over the work she performed at Northwestern suggests that she is an employee of Northwestern, not TotalMed. The Travel Assignment Agreement, however, executed by plaintiff expressly provided that her "employment with TotalMed is on an 'at will' basis." We further observe that the cases cited by plaintiff do not address retaliatory discharge claims and are otherwise inapposite. *E.g.*, *Hansen v. Caring Professional, Inc.*, 286 Ill. App. 3d 797, 802 (1997) (finding that a nurse staffing agency could not be held vicariously liable on a medical malpractice claim based on the alleged negligent acts of the nurse); *Joyce v. National Medical Registry, Inc.*, 170 Ill. App. 3d 141, 145 (1988) (same).

¶ 61 Even assuming plaintiff was an employee of Northwestern for purposes of a retaliatory discharge claim, there is no indication in the record that her discharge violated a clearly

mandated public policy. "To succeed in a retaliatory discharge claim, the public policy alleged by a plaintiff must be found in the state or federal constitutions and statutes and, when they are silent, in Illinois or federal case law." *Roberts*, 2019 IL 123594, ¶ 24. The existence of a public policy and the issue of whether that policy is undermined by the employee's discharge present questions of law. *Turner*, 233 Ill. 2d at 501.

¶ 62    While plaintiff contends that the Governor's executive orders "set forth the clearly mandated public policy to mitigate COVID-19 for individuals like [plaintiff] interacting with at-risk patients," our supreme court has held that a "broad, general statement of policy" is inadequate to justify finding an exception to the general rule of employment at will. *Id.* at 502. Although the COVID-19 guidance issued by the CDC and OSHA was more tailored to the healthcare arena, the materials cited by plaintiff did not expressly mandate the use of N95 respirators. "The phrase 'clearly mandated public policy' implies that the policy will be recognizable simply because it is clear." *Id.* at 503. During her deposition, plaintiff testified, "At the time on March 18 we knew little about COVID-19." Given the new and rapidly changing information regarding COVID-19 and its treatment in March 2020, plaintiff is unable to demonstrate that her discharge violated any "clear" public policy mandate. See *id.* at 508 (noting that the general concept of "patient safety" is inadequate to justify finding an exception to the general rule of at-will employment).

¶ 63    For the foregoing reasons, we affirm the grant of summary judgment in favor of Northwestern on plaintiff's retaliatory discharge claim.

¶ 64                                    *Rule 137 Sanctions*

¶ 65    Plaintiff also contends that the circuit court abused its discretion by implicitly denying her request for Rule 137 sanctions against Northwestern, as part of its denial of her motion to

reconsider. Rule 137 authorizes a court to impose sanctions against a party or counsel for filing a motion or pleading that is not well grounded in fact; that is not supported by existing law or lacks a good-faith basis for the modification, reversal, or extension of the law; or that is interposed for any improper purpose. Ill. S. Ct. R. 137 (eff. Jan. 1, 2018). The purpose of the rule is to prevent abuse of the judicial process by penalizing claimants who bring harassing and vexatious actions. *Sundance Homes, Inc. v. County of DuPage*, 195 Ill. 2d 257, 285-86 (2001). "In other words, the clear purpose of Rule 137 is to prevent the filing of false and frivolous lawsuits." *McCarthy v. Taylor*, 2019 IL 123622, ¶ 19.

¶ 66    As Rule 137 is penal in nature, it is narrowly construed. *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 12. See also *US Bank Trust, N.A., as Trustee for LSF11 Master Participation Trust v. Burnett*, 2021 IL App (1st) 210135, ¶ 37 (observing that Rule 137 sanctions should be reserved for "the most egregious cases"). Furthermore, the rule provides that a circuit court may impose sanctions when the rule is violated; it is not required to do so. *Lake Environmental*, 2015 IL 118110, ¶ 15. The decision to deny a motion for sanctions is reviewed for an abuse of discretion; the circuit court abuses its discretion when no reasonable person would agree with its decision. *Id.* ¶ 16.

¶ 67    Plaintiff contends that Northwestern made misrepresentations to the circuit court in its reply in support of its motion for summary judgment. Although plaintiff's citations to the record are unclear as to this point, she appears to argue that Northwestern falsely represented that there was a shortage of N95 respirators at Northwestern prior to the termination of her assignment. We are unable to locate such a representation in the reply. The reply did provide that: "Plaintiff does not dispute that, in March 2020, the CDC guidelines were in flux as the prevailing knowledge about COVID-19 and uncertainty about supply chains for PPE continued to shift."

17

This statement is plainly not problematic, and thus the circuit court did not err by failing to impose Rule 137 sanctions.

¶ 68                                *Tortious Interference Claims*

¶ 69    Plaintiff further contends that the circuit court erred in dismissing her claims for tortious interference with her contract and tortious interference with prospective economic advantage. Both claims were premised on Northwestern's alleged interference with her relationship with TotalMed.  As a threshold matter, however, we must address a jurisdictional issue raised by Northwestern.

¶ 70    As Northwestern accurately observes, plaintiff did not timely appeal the October 18, 2022, dismissal of the two tortious interference counts in the operative complaint, *i.e.*, the fourth amended complaint.  Rather, her amended notice of appeal filed on December 20, 2023, appealed the circuit court's order entered on April 11, 2022, which dismissed the tortious interference counts in the *third* amended complaint.  Approximately six months later, plaintiff filed a motion for leave to file a second amended notice of appeal; Northwestern filed a response objecting to the requested relief.  The motion and response were taken with the case pursuant to an order of this court.

¶ 71    "The timely filing of a notice of appeal is the only jurisdictional step for initiating appellate review." *JP Morgan Chase Bank, N.A. v. Bank of America, N.A.*, 2015 IL App (1st) 140428, ¶ 22.  The notice of appeal confers jurisdiction on the appellate court to consider only the judgments or pertinent parts specified therein.  *Id.* ¶ 23.

¶ 72    Illinois Supreme Court Rule 303(b)(5) provides that a notice of appeal may be amended without leave of court within the initial 30-day period to file an appeal, as plaintiff did herein. Ill. S. Ct. R. 303(b)(5) (eff. July 1, 2017).  The rule continues, "[t]hereafter it may be amended

only on motion, in the reviewing court, pursuant to paragraph (d) of this rule." *Id.* Rule 303(d) offers an additional 30-day period in which the reviewing court may grant leave to file an amended notice of appeal upon motion "supported by a showing of reasonable excuse." Ill. S. Ct. R. 303(d) (eff. July 1, 2017). When the additional 30-day period has elapsed, the appellate court lacks jurisdiction to allow any further amendment of the notice of appeal. *People v. Ratliff*, 2024 IL 129356, ¶ 16. Accord *Peters v. Herrin Community Unit School Dist. No. 4*, 2015 IL App (5th) 130465, ¶ 22.

¶ 73    In this case, plaintiff's motion for leave to file a second amended notice of appeal was filed well after the additional 30-day period. We thus have no jurisdiction to consider that motion. See *id.* As our jurisdiction is limited to that conferred by plaintiff's amended notice of appeal—*i.e.*, the dismissal of the tortious interference counts in the third amended complaint without prejudice—there is no final, appealable order as to the tortious interference claims for this court to properly consider.

¶ 74                                      CONCLUSION

¶ 75    For the foregoing reasons, we affirm the grant of summary judgment in favor of Northwestern on plaintiff's retaliatory discharge claim, and we affirm the circuit court's decision to deny plaintiff's request for Rule 137 sanctions against Northwestern. The motion taken with the case is not considered due to lack of appellate jurisdiction, and we find that we lack jurisdiction to consider the dismissal of plaintiff's claims for tortious interference with contract and tortious interference with prospective economic advantage. Based on our rulings herein, we need not consider plaintiff's contentions regarding reassignment to a new judge on remand.

¶ 76    Affirmed in part; dismissed in part.